## DENNIS BARNES *v.* THE STATE.

1. JURY.   *Regular venire.   Talesman.   Judicial power.*

If the two regular juries for the week are engaged in the jury-rooms consider-
ing submitted cases, when a case of grand larceny is called for trial, the court
has power to form a third jury, using for this purpose members of the regu-
lar panels who have been excused or challenged in the other cases, and filling
up the new jury with talesmen summoned from the by-standers.

2. SAME.   *Panel of Talesmen.   Semble.*

*Quœre.*   In the event that, in a case like this, no member of the regular panels
for the week is off duty, can the court form a jury entirely of by-standers?
It is said that one member of a regular panel at least must be called, although
challenging him will not defeat the jury; but it seems more reasonable to hold
that the power to form a jury is inherent, and unaffected by the absence of
all the regular venire.

APPEAL from the Circuit Court of Oktibbeha County.

Hon. JAMES M. ARNOLD, Judge.

Thomas Gant lost his cow and found her hung on a gallows.
Recognizing her by marks, he interrogated the butcher, who
said Dennis Barnes sold her to him.   Dennis was arrested.
He gave several conflicting accounts of the beef adventure, and,
among other things, said that Alex. Constantine told him to
take a cow and sell it, and that he was about fixing up to carry
the money to Constantine.   Alex. was seized by sudden sick-
ness just before the trial, as was another Constantine, supposed
to know the facts, and Dennis wanted a continuance to give
them time to recover; but the State admitted that Alex. and
Alice would testify as stated, and would say that the cow found
on the gallows was the veritable cow of Constantine.   There-
upon Barnes said he was ready.   But the court was not ready,
both juries being out.   In order to accommodate Dennis,
however, there was improvised, as stated in the opinion of
the court, what the State called a jury and Dennis called
a pretence.   But his objections were overruled, and the trial
proceeded.   The court charged this jury, at the instance of the
State, and to the great dissatisfaction of Dennis, who repeatedly
objected, thus : That if they were satisfied from the evidence

that Dennis stole the cow, they, being the judges of the weight of the evidence, would have to convict him, and this, notwithstanding the fact that he took her in Lowndes county and sold her in Oktibbeha ; that the admission by the State was that the family of Constantine would swear as stated, if present, and that a reasonable doubt was not a conjecture, a supposition or an hypothesis, but a doubt — a doubt which was reasonable — a doubt for which a reason could be given — a doubt which reasonably arose out of the testimony ; that, being a doubt, it was not a certainty, not even a mathematical certainty, nor yet was it a demonstrable certainty ; that while the testimony should be such as controls men's conduct in the highest and most important affairs of life, all that was required of them to find him guilty was, after consideration of all the evidence, to believe conscientiously that it established his guilt.   Notwithstanding the flood of light thrown upon a reasonable doubt by this last instruction, Dennis viewed the subject in four other lights, and the court, at his instance, solemnly charged the jury that they should acquit Dennis if there was any reasonable probability of his innocence ; that under the Constitution and the laws Dennis was presumed to be innocent until he was proved to be guilty ; that no man in this State can be convicted of any crime unless he has been fully, clearly, and satisfactorily proved to be guilty, to a moral certainty, and beyond any and every reasonable doubt, and that unless the jury are fully, clearly, and satisfactorily convinced of the defendant's guilt to a moral certainty and beyond all reasonable doubt, they are bound upon their oaths to say not guilty.   Dennis had also proved that he was a man of good character, and he obtained a charge that the jury should consider this fact.   He also had them instructed upon the singular unreliability of circumstantial evidence, and had the offence of larceny defined for them in the exact language of the books.   The State had a charge about the presumption arising from possession of recently stolen property ; but Dennis met this with another that if he gave a reasonable account of it, he should be ac-

quitted, unless the State proved his account false.   Now, Dennis at the trial had testified for himself and given the Constantine version, and this he had confirmed by two witnesses, old Black Joe and Oliver Cromwell.   So the jury retired, and remained in retiracy twenty hours, after which they returned and said : " We, the jury, find the defendant guilty as charged in the bill of indictment and ask the court to be as light in his sentence as possible."   Thereupon thirty-six other by-standers certified in writing to the court that they were of the opinion that if Dennis took Gant's cow, he did it by mistake ; that this did not amount to larceny, and he ought to have a new trial. In this view Dennis acquiesced and so indicated to the court in a motion for another hearing.   But the court, disregarding the advice of the thirty-six by-standers who did not get on the jury, overruled the motion, and asked Dennis what he had to say why sentence should not be pronounced on him.   Dennis said : " Judge, I did not steal that cow.   If it was Uncle Tom Gant's cow, I took it by mistake.   I do not deny that I got a cow, and have never denied it ; but I thought it was the cow that Alex. Constantine told me to take and sell."   Although the court had asked for some reason why sentence should not be pronounced, and had received this admirable reason, it appears not to have been heard, for the entry recites that Dennis said " naught," and adds, " it is therefore considered, ordered and adjudged by the court that " he be confined at labor in the State penitentiary for two years.   Dennis then embodied all his grievances in a bill of exceptions, which the judge signed, and Dennis appealed to this court.

*S. M. & W. C. Meek*, and *Dennis & Bridges*, and *J. T. Chiles*, for the appellant, argued in a printed brief, the facts and instructions, and also contended that the appellant was not tried by a jury legally authorized to consider or decide his case.   The statute, they argued, provides for only two juries, and it points out how these shall be formed.   If the circuit judge can empanel a third, wherein is the necessity for a statute upon the subject?   Calling the court's attention to Code

1880, pp. 466, 469, and especially to sect. 1693, they urged the consideration of this, as a matter essential to the administration of justice, and insisted that if the law could be disregarded in this instance, circuit judges can select juries in their own way, and try cases regardless of statutory or constitutional provisions.

*James L. Harris*, for the State, argued the instructions, commented on the facts, and, as to the jury, contended that all the jury laws are directory. Code 1880, sect. 1672 ; ———— v. ————, 55 Miss. 533. That the only object of these laws is to secure an impartial jury, and when, as in this case, the jurors are up to the standard, and the jury meets the constitutional requirements, the manner of their selection is immaterial. The three regular jurors were disengaged, although paid by the public, and it was right to utilize them. This formed the jury according to the English practice. 4 Geo. IV., ch. 50, sect. 37 ; 2 Thompson's Law Dic., p. 303, tit. "Jury." It must be that one or both the other juries had also a deficiency of regular jurors. Which, then, is the true jury? Obviously the statute (Code 1880, sect. 1709), in providing that the deficiency shall be supplied "whenever" it exists, covers a case like this one. The presiding judge has always the power to summon by-standers, in order to fill a jury after the regular panel is exhausted. 1 Archibald on Cr. Prac. 188. Deficiency of regular jurors from failure to attend is covered by Code 1880, sect. 1693. What then is the use of sect. 1709, unless it provides for supplying a deficiency resulting from another cause? But if the jurors are in attendance (inasmuch as this challenge does not effect this question) it is not apparent how a deficiency can happen, except by their being engaged on a previously submitted case.

CHALMERS, J., delivered the opinion of the court.

Both the juries for the week being engaged in their consultation rooms in the consideration of cases submitted to them when appellant's case was called for trial, the court below em-

panelled a third jury, using for that purpose three members of the regular panels who had been temporarily excused or challenged, and filling up the new jury with talesmen summoned from the by-standers. When arraigned before the jury thus constituted, the defendant challenged the array, on the ground hat the court had no legal power to empanel a third jury, and that he had the right to demand a trial before one of the regular juries for the week. His objection being overruled, he was forced to proceed to a trial which resulted in his conviction.

Our statutes contemplate and provide for the formation of two juries only for each week of the term of a circuit court; but there is no express prohibition of a third, and nothing which can be construed as expressly limiting the number to two. All our laws on the subject of the organization of juries are declared to be directory and not mandatory. Code 1880, sects. 1686, 1693, 1672.

It has been held from the earliest time that where no statutory provision prevented it, the course pursued in this case was proper. It is said that if there be no member of the regular panel present, the court cannot of its motion organize a jury, save in the special states of case provided for by the statute; but that so long as there is a single member of the regular venire in attendance, he may be utilized as the basis for the formation of a new jury, and that the power to do this will be not defeated by challenging or excusing such juror; but that the court, by his presence having acquired jurisdiction to organize the jury, may proceed to exercise the power, though such juror form no part of it. 1 Chitty's Cr. Law, 518; Bac. Abr., tit. " Jury," C, & D. ; *Williams* v. *The Commonwealth*, 91 Penn. St. 493; *Rogers* v. *The State*, 33 Ind. 543; *Bradley* v. *The State*, 45 Ind. 67; *Rondeau* v. *New Orleans*, 15 La. 160; *Fuller* v. *The State*, 1 Blackf. 63; *Emerick* v. *Sloan*, 18 Iowa, 139.

No better reason seems to be given for the difference in the power of the court caused by the presence or absence of a mem-

ber of the regular panel, than such as may be derived from the use of the *tales* in the old common-law writ of *tales de circumstantibus.* The sheriff being ordered to summon *tales homines,* it is said that there must already be one or more men in attendance, and that those to be summoned must be "such as" those already present or "so many as" may be requisite to complete the panel.

It would seem more consonant with reason to hold, that as the trial by jury is older than any statute governing it, and was a principle or evolution of the common law, the power of a court to invoke the aid of a jury in ascertaining a question of fact was inherent, and could, in the absence of any express or implied statutory inhibition, be exercised whenever the exigencies of the situation demanded it; and, therefore, that it will not depend upon the fact of the absence or presence of one or more members of the regular venire.

The question, however, is not important in this instance, since the presence of the three regular jurors, according to all the authorities, gave the power in this case.

The instructions given, taken as a whole, fairly presented the law of the case, and we cannot say that the verdict was unsupported by the evidence.

Affirmed.