86    141
f89    26
f89   156

86    141
e90   157

## DAVID POSEY *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Grand jurors. Excusing.*

On appeal in a criminal case, the facts not being shown, it will be presumed that the court's action in excusing members of the grand jury, after the impaneling of the same, was correct.

2. SAME. *Filling panel. Court's power.*

Where a grand jury of sixteen men was determined upon by the court, and after the impaneling of such a jury two of them were excused, the court was authorized to cause the number of jurymen to be increased to any number not exceeding twenty. Code 1892, § 2371.

3. SAME. *Code* 1892, §§ 2375, 2376, 2389. *Constitution* 1890, *sec.* 264.

Code 1892, § 2376, provides that if, after the grand jury has been sworn, any members be excused, the court may cause others to be sworn in their places. Sec. 2389 provides that all the provisions of law in relation to drawing, summoning, and impaneling juries are directory, and that a jury listed, etc., shall be deemed a legal jury after impaneling. Sec. 2375 provides that, after grand jurors shall have been sworn, no objection shall be raised to the grand jury, but the impaneling shall be conclusive evidence of its competency and qualification. Constitution 1890, sec. 264, declares that no person shall be a grand juror, unless a qualified elector, etc., but that the want of any such qualification in any juror shall not vitiate any indictment or verdict, and that the legislature shall provide by law for procuring a list of persons so qualified, and the drawing therefrom of grand jurors. After the impaneling of a grand jury, certain members having been excused, the court directed that bystanders (designating them) serve as grand jurors, though such persons were not among those listed by the supervisors for jury service, and though their names were not on the venire drawn for service during that term; but defendant made no direct challenge and took no exception at the time. In the absence of any showing that the jury was not fair and impartial, there was no ground for reversal of a conviction on an indictment found by the jury because the extra jurymen had not been on the lists, or because of the irregularity of the trial judge in himself selecting and summoning such jurors.

4. SAME.   *Cross-examination.   Harmless error.*

> A conviction of murder, there being no question but that defend-
> ant killed deceased, will not be reversed because defendant was
> not permitted to fully cross-examine a witness touching a casual
> statement by her to the effect that defendant told her he killed
> the deceased, where the state had first sought to introduce the
> whole conversation between defendant and the witness, but, on
> defendant's objection, was erroneously denied the right to do so.

FROM the circuit court of Lincoln county.

HON. MOYSE H. WILKINSON, Judge.

Posey, the appellant, was indicted, tried, and convicted of murder, and sentenced to the penitentiary for life, from which conviction and sentence he appealed to the supreme court. The facts upon which the decision turned are stated in the opinion of the court.

*A. C. McNair, J. W. McNair,* and *H. Cassedy,* for appellant.

*William Williams,* attorney-general, for appellee.

[The briefs of counsel in this case failed to reach the reporter, hence a synopsis of them is not given.]

Argued orally by *William Williams,* attorney-general, for appellee.

TRULY, J., delivered the opinion of the court.

Appellant was indicted for the murder of one Benjamin Bayliss. Before arraignment he filed a motion to quash the indictment, also a plea in abatement. The demurrer of the state to the plea in abatement was sustained, and the motion to quash, after taking testimony, was overruled. These rulings of the court are mainly assigned as error on this appeal.

The facts on which the plea in abatement was founded, and which formed the basis of the motion to quash, were substantially these: Upon the convening of court for the term at which appellant was indicted, the presiding judge directed that the

grand jury should consist of sixteen men, stating that the panel would be completed afterwards, directing the officers to draw the grand jurors, in conformity with the statutory provisions, from the regular venire for the week. The sixteen men so drawn were by the court, after due examination as to qualification and competency, duly and regularly impaneled, sworn, and charged, a foreman selected, and the grand jury placed in charge of a sworn bailiff. After the impaneling of the grand jury, but before the retirement of that body, two of the panel tendered excuses to the judge, which were accepted, and they relieved from service. Thereupon the judge directed the sheriff to call four named individuals from the bystanders, who, being duly examined as to competency and qualifications, and being found to possess all necessary constitutional qualifications, were by the court sworn as members of the grand jury, and they retired and participated in all the deliberations of the grand jury. At the time the judge summoned the four bystanders to serve as grand jurors, it is averred by the appellant, and not denied by the state, that there were other members of the venire for the week who had not been examined as to their qualifications for grand-jury service, and who were subsequently impaneled as members of the petit juries for the first week of the term. It further appears that the four men secured from the bystanders, while admittedly competent and duly qualified for grand-jury service, were not among those selected and listed by the board of supervisors for jury service during the year, and that their names were neither on the list so prepared nor on the venire drawn from the jury box for service during that term of court. The correctness of the action of the trial judge in so excusing members of the grand jury, and substituting others, under the circumstances above stated, is challenged on many grounds. It is said that the jury laws expressly direct the manner in which the grand and petit jurors for the term shall be secured; that the method to be adopted in selecting the grand jurors is mandatory and binding upon the court, leaving

him no discretion, and any failure to comply with the method there prescribed is fatal error. Again, it is said that the excusing from service of two members of the panel for reasons which are not shown by the record to be among those recognized by the statute as valid excuses also constitutes error, of which any person interested may at any time take advantage. The action of the court in substituting bystanders in the places of those excused is assailed as being a flagrant violation of the law, more particularly when thereby he ignored the venire comprising the names of those regularly secured for jury duty for the term, and chose others not selected or listed for jury service in the manner prescribed by law. It is also urged that the action of the court in adding to the grand jury others than those selected by lot in the statutory manner, so as to increase the panel beyond the number originally impaneled, constitutes reversible error. In this connéction it is argued that while the trial judge is vested by statute with discretion, before the grand jury is drawn, to determine the number which shall constitute it for the term, this discretion once exercised, and the number once fixed, and the panel completed, he is powerless to increase the number so originally decided on, no matter what unforeseen contingency may subsequently arise. Finally, it is insisted that as the persons so placed on the panel were not drawn or listed for jury service by the board of supervisors, as provided by the statute enacted in obedience to the mandate of sec. 264, Constitution 1890, their participation in the deliberations of the grand jury was unauthorized, and vitiated all indictments presented thereby. This objection, it is urged, growing out of a violation of a constitutional provision, attacks the existence of the grand jury as a constitutional body, and such an objection cannot be waived by a party accused or cured by a legislative enactment.

It must be noted that when the two jurors who had been selected in the manner prescribed by the statute tendered their excuses, which were accepted, and they relieved from further

service, this left the court without any legal grand jury. The number originally impaneled being only sixteen, when these two were excused there remained only fourteen duly constituted members of the grand jury, whereas the express terms of the statute make it necessary that the grand jury shall contain not less than fifteen. Confronted by this condition of affairs, it was the duty of the trial judge to refill the panel. The acceptance of the tendered excuses of the two jurors, in the absence of proof to the contrary, will be upheld as correct. No presumption of error will be indulged to invalidate judicial action. *Cotten* v. *State,* 31 Miss., 504; *Mills* v. *State,* 76 Md., 277 (25 Atl., 229); *Burrell* v. *State,* 129 Ind., 290 (28 N. E., 699); *State* v. *Bradford,* 57 N. H., 198; *United States* v. *Jones,* (D. C.), 69 Fed. Rep., 873; *State* v. *Arnold,* 55 Mo., 88.

The action of the court, then, in excusing the two jurors, being, by presumption of law, not erroneous, the next question presented is as to the method which he should have employed in refilling the panel of the grand jury, which has thus been reduced below the minimum statutory number required. That he had the power to fill the vacancies is unquestioned. Even in the absence of express statutory authorization the presiding judge is vested with inherent power to fill vacancies; otherwise it might often happen that death or sickness of one or more members of the panel would leave the court without a legally constituted grand jury. "When the power is given to excuse a juror, the power to fill the vacancy thus occasioned, by another possessing the necessary qualifications, is also conferred by necessary implication." *Burrell* v. *State, supra.* There is no statute prescribing any definite course to be followed in procuring jurors to fill vacancies occurring in the grand jury subsequent to impaneling. No mandatory provision of law compels the court to select persons to fill vacancies from other members of the venire for the term, or from the list prepared by the board of supervisors, or requires that they be drawn from the

regular jury box of the county. Code 1892, § 2376, simply provides that if after the grand jury has been sworn, and if the members be excused by the court—thus expressly clothing the court with power in this regard—"the court shall have power to cause others to be sworn in their places." In the instant case not only was it within the power of the court to have others sworn in the place of the jurors so excused, but, as hereinbefore indicated, under the peculiar circumstances of this case it was his duty so to do, in order that the business of the court, the investigation of crimes, and the presentment of indictments should be proceeded with by a competent grand jury. The power to excuse as well as the power to fill the vacancy is granted the judge, but the reasons for which he may grant excuses and the method in which he shall fill the vacancy are wisely submitted to his sound discretion. Having, then, the power to make substitution to fill these vacancies, and there being no statutory limitation upon the manner in which he should exercise his discretion in choosing the substitutes, was that power exhausted when the two vacancies caused by his acceptance of the excuses tendered were filled? The number which shall constitute the grand jury is left solely to the determination of the presiding judge. It is for him to say whether that number shall be fifteen or whether it shall be any greater number, not exceeding twenty. A circuit judge at the commencement of a term may deem fifteen a sufficient number, from the lights then before him, for the dispatch of business, and yet, from subsequent developments during the progress of the term, be convinced that the presence of certain individuals upon the grand jury, who, by reason of their favoritism or personal predilections, might desire to screen persons guilty of a special class of crimes, would so hamper or retard the investigations of the grand jury as to practically nullify the wholesome effect of its deliberations. In such cases there is no statute which forbids the presiding judge having other qualified jurors regularly summoned and added to the grand jury, provided the number be not increased beyond the

limit fixed by the law. Such a course could not by any possibility operate prejudicially to the rights of any one whose case might come before such grand jury for investigation. The law affords to him ample protection. It is his privilege at the time the additional grand jurors are impaneled to tender his personal challenge to each individual so selected, or he has the right at any time, where the facts warrant, to prefer a challenge to the array for fraud. These rights are secured to him, and this is all any person, whether innocent or guilty, may justly demand. *Boulo* v. *State,* 51 Ala., 19. The laws are not intended solely or chiefly for the protection of those accused of crime. It is, of course, of vital importance that the cases of all such be investigated by a fair and impartial grand jury, and be tried by a fair and impartial petit jury; but, beyond and above this, the laws are intended to subserve the public welfare, and upon nothing is the public welfare more dependent than an unfaltering, strict, and impartial enforcement of the criminal laws. Parties accused of crime are entitled to fair and impartial trials, but the public is equally entitled to see that every guilty man is brought to justice. Neither the state nor the party accused of crime has any right to demand any more than that the grand jury impaneled to investigate all crimes shall be fair and impartial. *United States* v. *Jones, supra.* The action of the court in the instant case deprived appellant of no right on this score, because it is clearly established that the persons substituted on the grand jury were constitutionally qualified, and there is no challenge for fraud preferred to the array. So we hold that the action of the trial judge in placing the additional members on the panel does not constitute reversible error, there having been no exception taken at the time and no challenge for fraud being presented. It is said, however, that the action of the court, while not with fraudulent or corrupt design, is a fraud in law, and that, even in the absence of a direct challenge or exception presented in due time, this court should decide that the jury laws have been violated, and should construe this of

itself to be sufficient to require the sustaining of the plea in abatement. We cannot so view the matter. The jury laws are expressly recognized by our statute (Code 1892, § 2389) as directory, merely, and a "jury listed, drawn, summoned, or impaneled, though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and shall have the power to perform all the duties devolving upon a jury." Conceding, therefore, that the trial judge should have adopted some other and different mode of procuring the additional members of the grand jury, still, after the jury was sworn and impaneled, it is by the law "deemed a legal jury," and any error of the court was cured, by the express terms of the section cited.

We have thus far considered the objections presented without regard to the existence of Code 1892, § 2375. That section expressly provides that, "after the grand jurors shall have been sworn and impaneled, no objection shall be raised, by plea or otherwise, to the grand jury; but the impaneling of the grand jury shall be conclusive evidence of its competency and qualifications." The grievance for which this statute was adopted as a remedy is thus graphically stated in the first case in which the law was presented for judicial construction: "The judicial records of the country furnished mortifying testimony that many culprits have gone free, unwhipped of justice, because of technical exceptions taken to the grand jury who preferred the indictments." *Head* v. *State,* 44 Miss., 749. We have recently held, in a case decided at this term, post (*Cain* v. *State,* 38 South. Rep., 227), that this statute embraced every character of objection to the qualifications or competency of the individual members of the grand-jury panel. We reaffirm that conclusion, approve the reason on which the rule is based, and recognize the necessity for its existence and the wisdom of a continued strict adherence to the rule of construction placed thereon. We again say that this section cuts off all objections of every character, save only challenges to the array for fraud, unless the

same are presented before impaneling, and in the manner indicated. We cite a .few of the numerous cases heretofore decided in this court sustaining this position: *Logan* v. *State,* 50 Miss., 277; *Dixon* v. *State,* 74 Miss., 282 (20 South. Rep., 839); *Head* v. *State, supra; Durrah* v. *State,* 44 Miss., 789; *Lee* v. *State,* 45 Miss., 116; *Nichols* v. *State,* 46 Miss., 286; *Chase* v. *State,* 46 Miss., 697.

The argument that the court, in selecting as members of the grand jury persons who had not been listed for jury service by the board of supervisors, ignored the terms of sec. 264 of the constitution, 1890, and therefore that appellant was deprived of his constitutional right of having his case investigated by a duly constituted grand jury before he could be "proceeded against" for an "indictable offense," and that the legislature has no authority to say that the objection must be presented at a particular time or in a special mode, we think untenable. The appellant has not been deprived of any constitutional guaranty. No man has the right to demand the service as jurors upon his case of any specially named individuals. A fair and impartial jury every man has the right to demand, but who, what particular persons, shall serve upon the jury, either grand or petit, is not one of his rights. If the jury impaneled to investigate his case, or to try his case after indictment, be a fair and impartial one, his constitutional rights are neither denied nor in any manner abridged. If such a jury be not tendered him, he can by timely action secure it, or by appeal obtain redress for any error committed in denying him his constitutionally guaranteed right. But under all circumstances the orderly dispatch of business demands that objections, even though constitutional in their character, shall be preferred at a time and in a manner directed by the legislature. The record here presented discloses that appellant was indicted by the unanimous vote of the grand jurors, eighteen in number. The proof further effectually disposes of the contention that the four persons selected were in any wise personally antagonistic to the appellant. It

is true that the testimony adduced upon the hearing of the
motion to quash showed that the men so selected had been in-
strumental in investigating crimes of "white-capping," in-
ferentially alleged in the testimony to have been of repeated
occurrence in that county; but appellant was not indicted for
white-capping, and the crime of which he stands convicted does
not trace its origin to any occurrence connected therewith.
Therefore the only objection which appellant personally could
rightfully present against the additional members of the grand
jury would be based, not on their qualifications nor their in-
dividual predisposition toward him, but solely because of the
manner in which they had been chosen; and such objection, as
we have hereinbefore indicated, in order to be entertained, must
be presented before the jurors are sworn and impaneled.  The
contention of appellant that as sec. 264 of the constitution
is mandatory in its provisions, requiring the legislature to pro-
vide for the listing and drawing of jurors, and that the statutory
plan adopted in compliance with the constitution is to be treated
as exclusive of all other methods and as binding upon the trial
judge and the jury officers, divesting them of all discretion, is
too narrow.  If adopted literally, it would make the trial of
cases, both civil and criminal, dependent solely upon the
promptness and fidelity with which the board of supervisors and
other county officers might discharge their duties in this regard.
The constitution deals with both grand and petit jurors.  All
are alike to be drawn from the list of qualified persons so pre-
pared.  So that in case of failure to prepare the list or draw
the jury, or if the list became exhausted, or the jury box was
fraudulently or improperly prepared, or the regular jurors
were from any cause disqualified, or in many other imaginable
contingencies when extra jurors are needed, if appellant's posi-
tion be well taken, the court would be powerless to cope with
the emergency, because there would be no jurors available who
had been listed according to law.  If this contention be sound,
and the board of supervisors of a county should fail to procure

a list of persons qualified as jurors, or if any of the other officers charged with any duty with reference to the listing or drawing of grand and petit jurors should fail to follow implicitly the provisions of the statute, then the public service would be compelled to halt, courts could not be held, the administration of justice would be hampered, the right would be unprotected, the wrong would go unpunished, the weak would be helpless, and tyrannical strength be unrestrained—a condition of affairs not contemplated by the makers of the constitution, and certainly not one to be encouraged by any narrow and technical construction of the terms of that instrument. The object of the constitution was to provide a method whereby duly qualified jurors might be procured, but the details of the plan were committed to the judgment of the legislature. The language of the constitutional provision under review expressly negatives the idea that the validity of an indictment or verdict was to be dependent on the qualifications of the jurors composing the panel.

Every juror is required to be a "qualified elector and able to read and write," but the section further recites that "the want of any such qualification in any juror shall not vitiate any verdict or indictment." If, then, the lack of constitutionally demanded qualifications does not invalidate the finding of a grand or petit jury, assuredly the fact that a duly qualified juror has not been formally listed or drawn was not intended to have so fatal an effect, especially in view of the legislative announcement that all such matters are to be considered as "directory merely." In our judgment, the plan adopted by the legislature was, as stated above, merely directory, and a departure therefrom not fatal error. While not presented in this exact form, in considering cognate questions this court has held in many cases that the fact that the jurors who served in cases which were reviewed on appeal were not listed and drawn as required by law did not constitute error to the prejudice of parties on trial. Citation is perhaps unnecessary, but we re-

fer, as specially illustrative of the extent to which the court has already gone on this question, to the cases of *Barnes* v. *State,* 60 Miss., 355; *Story* v. *State,* 68 Miss., 619 (10 South. Rep., 47); *Purvis* v. *State,* 71 Miss., 706 (14 South. Rep., 268); *West* v. *State,* 80 Miss., 710 (32 South. Rep., 298). In the case last cited it should be specially noted that the petit jurors who tried West had never been listed for jury service, their names were on no venire, and there served on the jury two men who lacked the constitutional requirements of a qualified juror, and this lack of qualification was called specially and directly to the attention of the trial judge before the impaneling of the jury. Yet, in the absence of exception tendered before impanelment, the appellant was held to have waived his right to be heard as to such incompetency, and the death sentence, as fixed by the verdict of that jury, was by this court affirmed. Surely, if the failure to list for jury service, even when joined with an admitted lack of qualification directly and expressly required by the constitution, can thus be waived as to the petit jurors, the final arbiters of the fate of the party indicted, the same rule requires that objections not of so vital a character, to the jurors who are vested merely with power of investigation and indictment, cannot avail unless presented in the manner and at the time required by law.

In view of the earnestness with which the cause of appellant has been presented and the signal ability and force with which the propositions advanced have been argued, we have given this question renewed and exhaustive examination, and subjoin a list of authorities from other jurisdictions sustaining our view —that irregularities, no matter how glaring, in the formation of the grand jury, if untainted by fraud or corruption, do not vitiate the indictment, and that all objections arising from mere matters of procedure must be presented before impanelment: *State* v. *Gibbs,* 39 Iowa, 319; *Stanley* v. *U. S.,* 1 Okl., 342 (33 Pac., 1025); *State* v. *Fitzhugh,* 2 Or., 231; *Lienburger* v. *State,* (Tex. Cr. App.), 21 S. W., 603; *Sage* v. *State,* 127 Ind., 17

(26 N. E., 667); *State* v. *Welch,* 33 Mo., 33; *State* v. *Belvel,* 89 Iowa, 409 (56 N. W., 545; 27 L. R. A., 846); *People* v. *Petrea,* 1 N. Y. Cr. R., 198; *Epperson* v. *State,* 5 Lea, 293; *State* v. *Bleekley,* 18 Mo., 430; *Dorman* v. *State,* 56 Ind., 457; *Turner* v. *State,* 78 Ga., 683 (3 S. E., 649).

It is urged again by the appellant that even if it be true that a party in custody or under bond awaiting investigation by a grand jury to be impaneled at a certain term of court might be required to present and avail himself of his right to challenge individual grand jurors, or except to the mode of impaneling, at the time which the statute provides, the principle which requires this exercise of diligence on the part of a person so situated can have no application to one not so in custody, not under bond, and who would have no reason to believe that his case would be investigated by the grand jury during its deliberations. The answer to this is twofold: First, as indicated in the Cain case, *supra,* the rule requiring objections to be preferred at a certain time was not devised or intended for the benefit alone of those accused of crime, but chiefly to insure the prompt enforcement of the criminal laws for the benefit of society at large and in order to prevent the unnecessary consumption of the time of courts in investigating and deciding technical exceptions to mere matters of procedure or challenges based upon the individual qualifications or bias or prejudice of members of the grand jury panel; second, in the instant case, as appears from the allegation of appellant's own plea in abatement, he knew that his case would come before this particular grand jury for investigation; and therefore, while the principle controls all persons, it is specially applicable to persons situated as was the appellant at the date of the impaneling of the grand jury, the formation of which he now assails. His plea in abatement expressly averred that he had had a preliminary examination of this particular occurrence before a conservator of the peace, and had been discharged from custody. This being true, it was the duty of the conservator of the peace, under Code

1892, § 1463, to take down in writing the substance of the material testimony in the case and return it to the circuit court of the proper county before its next term. This was legal notice to the appellant that the proceedings of the conservator of the peace would be presented for the consideration of the grand jury which would be impaneled at the ensuing term of the circuit court. Thus he was by law advised that he would be interested in that grand jury and in the result of its deliberations. We have said this much in response to this suggestion of appellant, but again announce that the rule requiring objections to be preferred before the impaneling of the grand jury applies to all alike.

The course adopted by the circuit judge in himself selecting and summoning the four men placed on the panel of the grand jury was irregular. This action was subject to challenge by any one concerned in the deliberations of the grand jury. Had objection, preferred at proper time and in proper manner, been overruled, such ruling would, as to any one prejudiced thereby, have constituted reversible error. Nevertheless, considering the great discretion necessarily vested in our circuit judges—a discretion rarely abused, and never in the judicial history of the state converted into a weapon of oppression—and that in the instant case no corrupt or sinister motive can be, or is sought to be, attributed to the trial judge, we think a mere error of judgment, not impinging upon appellant's rights, does not constitute such error as can avail appellant, especially in view of the broad provisions of our statute that all such matters of procedure are directory, merely, and that, after indictment returned, all persons are precluded from presenting objections predicated of any failure to comply therewith. The record shows that, however unauthorized and irregular the method employed may have been, the grand jury, so far as appellant was individually concerned, was perfectly fair and impartial, and every member thereof possessed all constitutional require-

ments. This was the full sum of appellant's rights, and he has no cause of complaint.

The objection to instruction No. 1 granted the state is without merit. It is substantially in the language of Code 1892, § 1159, and was based on the testimony of the witness Cagle, introduced on behalf of appellant. It presented a theory which, conceding that testimony to be true, the state had the right to have submitted to the jury.

The exception that the appellant was not permitted to fully cross-examine the witness, Catherine Ray, as to the statement made to her by appellant after the killing constitutes no reversible error. When the state first sought to introduce the alleged conversation between the witness and appellant, it was met by the objection of the appellant, and that objection was sustained, and the conversation excluded—improperly, it is true, but on the motion of appellant, and certainly not to his prejudice, if not to his benefit. Subsequently the witness was permitted, not to repeat the conversation, but to make the bare statement that appellant told her that he had killed deceased. In view of the fact that the conversation was excluded of appellant's own motion, considered in connection with the further fact that there was no denial that appellant had killed deceased —both he and his witnesses so testifying—and that the only dispute was as to the circumstances of the homicide, this ruling could not possibly have been prejudicial to the interests of appellant.

On the facts of the case, appellant certainly has no ground of complaint at the verdict rendered. The theory of the state, supported by proof both positive and circumstantial, would have warranted the jury in returning a verdict carrying a penalty more severe.

*Affirmed.*