## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 97-CA-00063-SCT

*RONNIE PAGE AND LAVON PAGE*

*v.*

*SIEMENS ENERGY AND AUTOMATION, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/96 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOSEPH R. MEADOWS |
| | KAREN J. YOUNG |
| ATTORNEYS FOR APPELLEE: | LOUIS B. LANOUX |
| | REBECCA LEE WIGGS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 10/08/98 |
| MOTION FOR REHEARING FILED: | 11/5/98 |
| MANDATE ISSUED: | |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Ronnie and Lavon Page appeal a December 10, 1996 order of the Jackson County Circuit Court denying their motion for relief from judgment pursuant to Miss. R. Civ. P. 60(b)(3) and 60(b)(6), finding that their claim of a skewed jury was waived. The Pages contend that the circuit court erred in denying their motion to introduce certified testimony taken in an evidentiary hearing. They assert also that the circuit court erred in denying the relief sought because they were deprived of a jury consisting of a fair cross-section of the Jackson County population and in holding that they waived the "skewed jury" issue. They further argue that they were denied a fair and impartial jury because qualified jurors were excluded from the jury list and potential jurors who were over sixty-five as well as those who claimed medical, financial or work hardships were unilaterally excused by the clerk prior to the actual voir dire examination. The Pages further contend that exclusion of jurors close to their age was age discrimination. We find that the Jackson County Circuit Clerk failed to follow the statutory procedures for calling jurors, resulting in the unilateral exclusion from the venire of persons qualified for jury service. Accordingly, the case is reversed and remanded for a new trial.

¶2. Ronnie Page was injured in an electrical accident at Litton Ingalls Shipbuilding in Pascagoula on September 1, 1987. Page, an electrician, was in the process of expanding temporary shore power services to a ship under construction by Litton when the accident happened. He was attempting to change over power from a 200 amp disconnect located on a utility substation to a 400 amp disconnect located on an adjacent substation. During the procedure, Page was unexpectedly subjected to an electrical arcing caused when a steel line terminal shield plate fell from its mounting, shorting the energized side terminals. Page sustained third-degree burns to forty-seven percent of his body, leaving him permanently scarred. The disconnect switch was manufactured by Siemens Energy and Automation, Inc.

¶3. On May 24, 1993, the Pages filed suit against Siemens seeking both compensatory and punitive damages for the injuries suffered by Ronnie Page, as well as damages on behalf of Lavon Page for loss of consortium. The Pages alleged that the negligent design of a disconnect switch almost electrocuted Page, and that the switch could have been manufactured in a safer way. The case was removed to the United States District Court. At that point, Siemens joined Ingalls Shipbuilding, Inc., Page's employer, as a party defendant. On the Pages' motion, the case was remanded to the circuit court because the joinder of Ingalls defeated diversity of jurisdiction. A jury of the Jackson County Circuit Court returned a 10-2 verdict in favor of Siemens, with final judgment entered on October 24, 1995. On November 5, 1995, the Pages filed a motion for new trial, which was denied.

¶4. This case was tried during the October 1995 term of court in Jackson County. The certified jury list contains the names of all citizens summoned for jury duty that week, but only mere voter precincts, not addresses, are included on that list. The list was presented to counsel for both sides several days prior to trial. However, on the day jury selection began, the potential jurors submitted questionnaires revealing their specific addresses.

¶5. The Pages' attorney consulted another attorney, George Shaddock, during the jury selection process. Shaddock relayed his concerns about the unusually high number of jurors from Ocean Springs. However, the Pages did not make any objections then or during voir dire to the statistical makeup of the jury.

¶6. On November 15, 1995, after the Pages' trial and unbeknownst to them, the circuit court judge ordered the jury wheel to be emptied and refilled according to the proper statutory procedure, because a "disproportionate number of jurors from West Jackson County were drawn from the jury wheel for the current term." The judge so acted only after Shaddock investigated the concerns about the jury and brought them to the judge's attention.

¶7. In March 1996, counsel for the Pages discovered that there had been a problem with the jury wheel and the certified jury list drawn by the clerk which provided the jurors in the Pages' trial. The Pages filed a motion for relief from judgment on March 27, 1996, challenging the impaneling of the jury which heard this case. Siemens opposed the motion, and a hearing was conducted on November 8, 1996. On December 10, 1996, the circuit judge denied the Pages' motion for relief from judgment pursuant to Miss. R. Civ. P. 60(b)(3) and 60(b)(6), stating that the skewed jury issue was waived. The circuit court judge ruled that:

plaintiffs' counsel had notice and knowledge for a possible problem with the jury venire even though they may not have been aware of the specific problem, they are required, at the very least, to make a general objection in order to preserve the error, if any. Their failure to enter a timely objection waives this issue.

It is from this denial of their motion for relief from judgment that the Pages now appeal.

II.

¶8. The Pages were not in a position to discover the circuit clerk's practices of excluding all potential jurors who had been summoned to serve on the jury within the past two years and of granting excuses to jurors without them coming to court. We reverse on this issue.

¶9. Jury selection is controlled by Miss. Code Ann. § 13-5-1, et seq. Miss. Code Ann. § 13-5-8 provides that:

> (1) In April of each year, the jury commission for each county shall compile and maintain a master list consisting of the voter registration list for the county.

> (2) The circuit clerk of the county and the registrar of voters shall have the duty to certify to the commission during the month of January of each year under the seal of his office the voter registration list for the county.

Section 13-5-10 provides for the maintaining of a jury wheel:

> The jury commission for each county shall maintain a jury wheel into which the commission shall place the names or identifying numbers of prospective jurors taken from the master list . . . . In April of each year, . . . the wheel shall be emptied and refilled as prescribed in this chapter.

Further, §13-5-16(1) provides that:

> [F]rom time to time and in a manner prescribed by the court, a private citizen who does not have an interest in a case pending trial and who is not a practicing attorney publicly shall draw at random from the jury wheel the names or identifying numbers of as many prospective jurors as the court by order requires. The clerk shall prepare an alphabetical list of the names drawn. Neither the names drawn nor the list shall be disclosed to any person other than pursuant to this chapter or specific order of the court.

Miss. Code Ann. § 13-5-26 provides as follows for maintaining a jury box:

> (1) The circuit clerk shall maintain a jury box and shall place therein the names or identifying numbers of all prospective jurors drawn from the jury wheel.

> (2) A judge or any court or any other state or county official having authority to conduct a trial or hearing with a jury within the county may direct the circuit clerk to draw and assign to that court or official the number of jurors he deems necessary for one or more jury panels or as required by law for a grand jury, except as otherwise provided by subsection (3) of this section. Upon receipt of the direction, and in a manner prescribed by the court, the circuit clerk shall publicly draw at random from the jury box the number of jurors specified.

Section 13-5-28 provides for the summoning of jurors:

> If a grand, petit or other jury is ordered to be drawn, the clerk thereafter shall cause each person drawn for jury service to be served with a summons, either personally or by mail, addressed to him at his usual residence, business or post office address, requiring him to report for jury service at a specified time and place.

¶10. The Pages basically claim that because the actions of the clerk were unconstitutional and without authority of law, the circuit court should have determined that despite any waiver, the motion for relief from judgment should have been granted. This Court has previously rejected a similar argument.

> It is said, however, that the action of the court, while not with fraudulent or corrupt design, is a fraud in law, and that, even in the absence of a direct challenge or exception presented in due time, this court should decide that the jury laws have been violated, and should construe this of itself to be sufficient to require the sustaining of the plea in abatement. We cannot so view the matter. The jury laws are expressly recognized by our statute (section 2389, Code 1892) as directory, merely, and a "jury listed, drawn, summoned or impaneled though in an informal or irregular manner, shall be deemed a legal jury after it shall have been impaneled and sworn, and shall have the power to perform all the duties devolving upon a jury." Conceding, therefore, that the trial judge should have adopted some other and different mode of procuring the additional members of the grand jury, still, after the jury was sworn and impaneled, it is by the law "deemed a legal jury," and any error of the court was cured, by the express terms of the section cited.

*Posey v. State*, 86 Miss. 141, 38 So. 324, 326 (1905). *See also* Miss. Code Ann. § 13-5-87 (provisions for listing, drawing, summoning and impaneling jurors are directory).

¶11. It is clear in this case that the Pages failed to make an objection to the composition of the jury, either before the jury was impaneled and sworn or after trial. Their motion for new trial was based on the evidence, not on jury composition. Rather, the Pages sought to challenge the jury composition through the motion for relief from judgment. The Pages filed their motion for relief from judgment pursuant to Miss. R. Civ. P. 60(b)(3), which allows relief based on newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial, and Miss. R. Civ. P. 60(b)(6)(the "catch-all" provision) which covers any other reasons justifying relief from judgment.

¶12. Pursuant to Miss. R. Civ. P. 60(b)(3), new evidence is "evidence in existence of which a party was excusably ignorant, discovered after trial. In addition, facts implying reasonable diligence must be provided by the movant. The evidence must be material, and not cumulative or impeaching, and it must be such as to require a different result." *January v. Barnes*, 621 So. 2d 915, 920 (Miss. 1992) (citing *N.L.R.B. v. Jacob E. Decker and Sons*, 569 F.2d 357, 363 (5th Cir. 1978)).

¶13. Relief under Rule 60(b)(6) "is reserved for exceptional and compelling circumstances. It must be based on some reason other than the first five clauses, and it must be some ground which will justify relief from the final judgment." *Sartain v. White*, 588 So. 2d 204, 212 (Miss. 1991). When reviewing a grant or denial of a 60(b) motion, this Court will not reverse unless convinced that the circuit court

has abused its discretion. ***Burkett v. Burkett***, 537 So. 2d 443, 446 (Miss. 1989). When faced with application of Miss. R. Civ. P. 60(b), the trial court must exercise a balancing test. Generally, consideration of a rule 60(b) motion requires that a balance be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality. ***Lose v. Illinois Cent. Gulf R.R. Co.***, 584 So. 2d 1284, 1285 (Miss. 1991). Specifically, the [trial] court is directed to consider (1) the nature and legitimacy of defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside. ***Cannon v. Cannon***, 571 So. 2d 976, 978 (Miss. 1990).

¶14. This Court also has recognized and applied several other factors when deciding if relief should be granted under Rule 60(b): (1) that final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether--if the judgment was rendered after a trial on the merits--the movant had a fair opportunity to present his claim or defense; (6) whether there are intervening equities that would make it inequitable to grant relief; and (7) any other factors relevant to the justice of the judgment under attack. ***Briney v. United States Fidelity & Guar. Co.***, No. 96-CA-00903-SCT, slip op. at ¶ 20 (Miss. June 4, 1998).

¶15. While Rule 60(b)(6) stands as a "grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, or when it is uncertain that one or more of the preceding clauses afford relief," ***Accredited Sur. and Cas. Co.***, 535 So. 2d 56, 59 (Miss. 1988), "rule 60(b) is not an escape hatch for litigants who had procedural opportunities afforded under other rules and who without cause failed to pursue those procedural remedies." ***State ex rel. Mississippi Bureau of Narcotics v. One (1) Chevrolet Nova Automobile***, 573 So. 2d 787, 790 (Miss. 1990).

¶16. Miss. Code Ann. §§ 13-5-23 and 13-5-25 both provide for exemptions and privileges that may be claimed by Mississippians summoned for jury services. Miss. Code Ann. § 13-5-25 addresses the privileges of age and prior service:

> Every citizen over sixty-five (65) years of age, and everyone who has served on the regular panel as a juror in the actual trial of one or more litigated cases within two (2) years, shall be exempt from service if he claims the privilege; but the latter class shall serve as talesmen, and on special venire, and on the regular panel, if there be a deficiency of jurors. No qualified juror shall be excluded because of any such reasons, but the same shall be a personal privilege to be claimed by any person selected for jury duty.

¶17. Joe Martin, the circuit clerk, admitted that he directed the computer programmer to exclude from the jury lists all jurors who had been summoned to jury duty in either circuit or county courts within the preceding two years, whether they actually had served or not. Even if the clerk's office claims expediency as a purpose, this does nothing to change the fact that citizens who were entitled, and who may want, to serve on juries have been intentionally excluded.

¶18. The Louisiana Supreme Court was faced with similar facts in ***State v. Procell***, 332 So. 2d 814, 815 (La. 1976). In that case, the defendant appealed his conviction because all qualified citizens were not given an opportunity to be considered for jury service. The Louisiana Supreme Court

promulgated rules that allowed certain classes of qualified citizens to have a personal exemption from jury service. La. Rev. Stat. Ann., Rule 25 of the Supreme Court of Louisiana. However, the Sabine Parish jury commissioners in *Procell* attempted "themselves to avoid selecting a person for the general venire whom they" believed fell under an exemption. *Procell*, 332 So. 2d at 817. The Louisiana Supreme Court found that under this system, certain qualified jurors were denied the opportunity to serve because the jury commissioners excluded their names from the venire based on exemption they could assert. *Id.* "This exclusion clearly contravenes the letter and spirit of the law. It means that the general venire is not selected impartially, as our constitution and statutes require, and that the general venire was improperly constituted . . . ." *Id.*

¶19. In *Adams v. State*, 537 So. 2d 891 (Miss. 1989), the Carroll County deputy circuit clerk unilaterally struck from the jury list all persons over the age of sixty-five as well as all of those persons who had served on a jury within the preceding two years. Counsel for the defendant made a timely objection to the circuit clerk's jury selection practices prior to trial. *Id.* at 892. We recognized that this Court had "never condoned a venire selection process completely contrary to [the statutes] wherein the clerk did that which the law expressly prohibits" and noted that the error was brought to the attention of the trial court. *Id.* at 895. The case was reversed and remanded for a new trial.

¶20. It appears from the record that the Pages fortuitously learned of the practices of the circuit court clerk only after the fact, and then, thanks to the efforts of George Shaddock. They assert that they had no prior knowledge of the clerk's unconstitutional practices and that they did not learn of Shaddock's findings until March 1996.[1] Though the defendant in *Adams* made an issue of the circuit clerk's practices prior to trial, as Siemens steadfastly asserts, the Pages would have had no reason to assume that the circuit clerk was selecting potential jurors in derogation of the Mississippi Code. In fact, given the pronouncement in *Adams* regarding the automatic exclusion of potential jurors from the venire without a specific exercise of exemption made in 1989, the Pages and their attorney would have had even less reason to believe that in 1995, the circuit clerk for Jackson County would even consider selecting jurors for the venire in violation of constitutional provisions and a clear mandate from this Court. We therefore find that this constitutes an exceptional circumstance as contemplated by Miss. R. Civ. P. 60(b)(6). It is not the sort of problem we expect a litigant to encounter. Apparently, our earlier mandate in *Adams* has gone unheeded.[2] Unfortunate as it may be for the appellees, the rule must be reemphasized here. We reverse on this issue, yet deem it reasonable to briefly discuss the remaining issues.

III.

¶21. The Pages argue that the circuit court should have taken judicial notice of the testimony from an evidentiary hearing in another proceeding. They contend that the judge should have admitted the certified transcript and order from *State of Mississippi v. Mark Richardson*, Cause No. 95-10-864(3), because they showed evidence of the specific violations of the jury selection statutes by the circuit clerk's office in that case.

¶22. Miss. R. Evid. 201(b) provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Pages concede that the circuit judge below "gave credence to the Plaintiffs'

position concerning the jury "discrepancies" because she opined that there was "no contest as to what the evidence . . . showed happened." The judge also assumed that the circuit clerk had violated the jury selection statutes, acknowledging her November 15, 1995 order.

¶23. Given that the court specifically recognized the merit of the Pages' argument, we find no reason why the transcript of the testimony taken in *State v. Richardson* should have been introduced. Although the court must take judicial notice of facts if requested by a party and supplied with the necessary information, the trial court did take judicial notice of the order correcting the clerk's practices. The introduction of the transcript would have been, at best, repetitive. Judicial notice is intended to expedite matters within the trial court, but in this case, judicial notice would not have aided the judicial process further.

IV.

¶24. The Pages allege that they did not receive a fair and impartial jury representing a cross-section of the Jackson County population. There is no question that plaintiffs and defendants are entitled to a fair and impartial jury in this State. Respect for the sanctity of an impartial trial requires that courts guard against even the appearance of unfairness for "public confidence in the fairness of jury trials is essential to the existence of our legal system. Whatever tends to threaten public confidence in the fairness of jury trials, tends to threaten one of our sacred legal institutions." *Toyota Motor Corp. v. McLaurin*, 642 So.2d 351, 356 (Miss. 1994). *See also Mhoon v. State*, 464 So. 2d 77, 81 (Miss. 1985).

¶25. The Pages argue that evidence presented by Tonya Hasbrouck showed that a disproportionate number of jurors were called from the west side of the Pascagoula River. They also allege that the testimony of John Fahnestock showed that the selection process had not been random, because too many names were put into the jury wheel. She also testified that the computer was choosing names from the voter registration list in district chronological order, in violation of the Mississippi Code. Dr. Warren Beatty testified that because ninety percent of the jurors called for service were from the west side of the county, a significant deviation from the random process occurred. Joe Martin, the circuit clerk for Jackson County, testified that all jurors who had been summoned to jury duty in circuit or county courts within the preceding two years were excluded from the jury list.

¶26. The Pages believe that they were entitled to have a jury which included a proportionate number of jurors from the east side of Jackson County as opposed to the west side of Jackson County. This Court has previously rejected such an argument. *See Ladner v. State*, 197 So. 2d 257, 260 (Miss. 1967) (noting that failure to select jury from districts proportionately does not authorize the quashing of the venire); *Kouvarakis v. Hawver*, 208 Miss. 697, 45 So. 2d 278 (1950); *Simmons v. State*, 109 Miss. 605, 68 So. 913 (1915) (holding that where no prejudice was shown because qualified jurors came from one area instead of another, a fair and impartial trial may be presumed).

V.

¶27. The Pages argue that the trial court erred when it ruled that their argument regarding a "skewed jury" was waived because they did not realize the problem with the jury selection process until the time for filing a motion for new trial. The Pages allege they had no prior notice of "insufficient or irregular procedure" and that there was no way for them to have known of the statistical aberration.

The Pages rely on the fact that the certified jury list given to them prior to trial did not list the addresses of the potential jurors. However, the potential jurors were required to fill out questionnaire cards on which included their addresses. Therefore, we find no merit in the Pages' claims regarding statistical aberrations in the jury pool. This Court has held that a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter. *Hunter v. State*, 684 So. 2d 625, 631 (Miss. 1996). Because the Pages could have exercised due diligence to discover that the aberration on the jury existed, they have waived the claim on appeal.

VI.

¶28. We find the circuit clerk's practice of excluding certain citizens from the venire pool requires that this case be reversed and remanded to the Circuit Court of Jackson County for a new trial, with special instructions to the circuit clerk to follow the statutory guidelines for jury selection. There is no merit to the other issues raised.

¶29. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., AND WALLER, J., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS AND MILLS, JJ. ROBERTS, J., JOINS IN PART.**

**SMITH, JUSTICE, DISSENTING:**

¶30. In my view, the Plaintiffs waived any objection to a supposed improperly impaneled jury by not doing so at the proper time. Miss. Code Ann. § 13-5-87 which concerns the drawing, summoning and impaneling of juries is directory rather than mandatory. Precedent was established long ago regarding this issue in *Arnold v. State*, 171 Miss. 164, 169, 157 So. 247, 248 (1934). *Arnold*, dealt with a defendant's objection to a special venire where he moved to quash the venire on the day jurors appeared in court, rather than the day their names were drawn. This Court stated, "the provisions of law in relation to the drawing of juries were merely directory." *Id.* The Court held that the objection was waived because it was not made at the time the special venire was drawn. *Id. See also Walker v. State*, 229 Miss. 540, 551, 91 So. 2d 548, 552-53 (1956)(*citing* 39 Am. Jr., *New Trial*, § 44, pp. 64-65) (defendant complained for the first time in post-trial motions that the jury was prejudiced against him because no African-Americans served on the jury). The *Walker* court held that there was no evidence that any effort to investigate or challenge the jury in advance of trial was made, nor was there any evidence that Walker was denied the opportunity to object, thus the objection was deemed waived by this Court. *Id.*

¶31. The Pages argue and the majority accepts as valid their claim that their counsel could not have known of the problem by examining the Certified Jury List given to them days in advance of trial because of the lack of addresses. Had plaintiff's counsel examined this list, they would have noted

that the voter precincts of each juror was listed, thereby making it very easy to ascertain that the jurors were from the Western part of Jackson County. However, an alternate document, the Jury Questionnaires, given to counsel prior to voir dire did in fact contain the proper addresses of each juror. The significant greater number of jurors from the western area of Jackson County should have been clearly evident to the Pages and their counsel before voir dire of the jury commenced. There is no valid reason why plaintiff's counsel failed to raise a timely objection to these obvious irregularities. Even more supportive of this view is that George Shaddock, a local attorney, assisted the Pages' counsel during jury selection, a fact also noted in this record by the trial court in ruling on this very issue. Subsequently, Shaddock, representing a criminal defendant, later in another case successfully had that case dismissed by the same trial judge based on this very issue. Shaddock followed up in that case on what he had noted about jury irregularities, whereas counsel for the Pages did nothing in this case. Even more convincing is that counsel for the Pages admitted that Shaddock told them during voir dire that there were **"a whole lot of people over here from Ocean Springs. Something is wrong."** Armed with the actual knowledge of Shaddock's concerns that something was wrong, in the jury selection process, the Pages' counsel should have raised this issue before trial, during voir dire, or at the very least during trial. Not only did they fail to act, they make no showing of any effort prior to or during jury selection to further investigate or make inquires regarding this rather obvious problem. Nor do they allege that they were prevented from discovering at that time what later turned out to be an irregularity with the clerk's practices regarding the jury wheel. Nor did they raise the issue during their motion for a new trial. Accordingly, the jury verdict should not be set aside. *Walker*, 229 Miss at 551, 91 So. 2d at 553.

¶32. The logic of the statute is that even if a jury is ultimately impaneled and some informal or irregular violation has occurred, nevertheless, once sworn without any objection, the jury has the power to perform all the duties devolving on the jury. Over one hundred years ago, in *Posey v. State*, 86 Miss. 141, 148, 38 So. 324, 326 (1892), applying § 2389 Code 1892, the predecessor of § 13-5-87, this Court stated, "[A]fter the jury was sworn and impaneled, it is by the law 'deemed a legal jury,' and any error of the court was cured, by the express terms of the section cited." *Id.* More recently, in *Hunter v. State*, 684 So. 2d 625, (Miss. 1996), considering the issue of failure to object to the jury's composition before it is empaneled, "[T]his Court has often held that a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn." *Id.* at 631 (*quoting* *Conner v. State*, 632 So. 2d 1239, 1264 (Miss. 1993)).

¶33. The plaintiffs waited six months after the jury verdict in favor of the defendants to raise the issue that the jury was selected contrary to the jury selection statutes. The plaintiffs had the opportunity to determine whether the jurors were qualified and they waived the issue because of their failure to object. Absent a showing of fraud, unfairness or prejudice, a departure from the statutory scheme for listing, drawing, summoning and impaneling a jury is not sufficient to overturn a jury verdict. *See* *Avery v. State*, 555 So. 2d 1039 (Miss. 1990), overruled on other grounds by *Mayfield v. State*, 612 So. 2d 1120 (Miss. 1992) ; *Parker v. State*, 201 Miss. 579, 29 So. 2d 910 (1947). The majority writes that the plaintiffs did not learn about the violations regarding jury selection until long after trial, thus they should receive a new trial due to "an exceptional circumstance as contemplated by Miss. R. Civ. P. 60(b)(6)." *Majority* at 14. The majority, relying upon *Adams v. State*, 537 So. 2d 891 (Miss. 1989), reasons that this "is not the sort of problem we expect a litigant to encounter." However, the majority fails to heed the distinguishing difference in *Adams* as compared to the case at

bar, i.e., there was a timely objection made *prior to trial* in *Adams*, yet six months elapsed in the case at bar. Plus, as already noted, counsel for the Pages had knowledge of the problem prior to and during voir dire. Shaddock gave them sufficient information during voir dire and the jury selection process to question the procedure by proper objection. Had they made a timely objection at that time and presented the issue to the trial court, the trial court could have addressed the issue and satisfactorily handled the situation. A continuance could have been granted and the matter could have been tried by another jury panel at a later date. Instead, plaintiffs did absolutely nothing.

¶34. Plaintiffs fail to show that any of the jurors were in fact not qualified. They also fail to show prejudice from the jury panel due to the unusual disproportionate number of jurors on the panel from the west side of Jackson County, except to suggest that the jurors were not "blue collar workers." Plaintiffs apparently believe a juror from Western Jackson County could not be fair to this case. That mere allegation is both insulting and insufficient. Disappointed with a jury verdict against them, this is but a thinly disguised attempt by the plaintiffs to have another jury consider this case, in hopes of receiving a verdict awarding plaintiffs' damages.

¶35. I respectfully dissent.

**BANKS AND MILLS, JJ., JOIN THIS OPINION. ROBERTS, J., JOINS THIS OPINION IN PART.**

1. Justice Smith's dissent makes much ado about the majority's grant of a new trial. It rests its claims on the grounds that no timely objection was made prior to trial despite the Pages' maintenance of "actual knowledge of Shaddock's concerns" prior to and during jury selection. However, the dissent fails to accurately acknowledge that the Pages were indeed only armed with Shaddock's **concerns**. Concerns are not facts. Concerns alone are not objectionable. It was not until after the trial that Shaddock's mere concerns about possible impropriety became objectionable findings.

2. While the Pages further allege that the circuit clerk also excused individuals who claimed medical conditions, financial hardships, and work hardships without requiring them to provide an affidavit or an excuse in open court, we have reviewed the testimony of Joe Martin and cannot find a clear statement that such affidavits or open court excuses were not required. Nonetheless, if true, such exclusion by anyone except the circuit court judge would also be problematic. *See **Harris v. State**,* 406 So. 2d 823, 824 (Miss. 1981).