Mr. Chief Justice Sharkey
delivered the opinion of the court.
The prisoner was indicted and found guilty of the murder of one Donaho. A motion was made for a new trial for the following reasons: 1st. Because the verdict of the jury is contrary to law and evidence; 2d. That the court improperly released and dismissed two of the jurors who had been summoned under the special venire, against the consent and remonstrance of the prisoner; and 3d. Persons not of the jury were permitted to visit and mingle with the jury, after the cause had been submitted to them and they had retired to consider of their verdict. We shall confine our remarks to the second and third reasons assigned for a new,trial.
A bill of exceptions taken during the progress of the trial shows this state of facts: In making up the jury, the name of Jesse D. Granberry was regularly reached on the list of jurors summoned. The juror was examined, (on his voir dire, as we must suppose,) and stated that he had not formed or expressed an opinion as to the guilt or innocence of the accused, and entertained no conscientious scruples as to the punishment of death for murder. The juror stated to the court, that his wife was confined to her bed by sickness, and a physician had been called in to attend her, for which reason he desired to be excused. The counsel for the prisoner objected, and the district attorney also refused his assent, but the court, notwithstanding, excused the juror from serving.
There can be no justification for such an exercise of power. A list of the venire is to be furnished the prisoner two entire days before the trial. This is to give him an opportunity of selecting a jury from the list furnished. A prisoner has not a right to be tried by such a jury as he might select from the body of the county, but he has a right to make his selection from the list furnished him, as far as it is practicable for him to do so by exercising the right of challenge for cause, or his right of per *401 emptory challenge. When he can no longer challenge, he must take them as they stand upon the list. And when a juror is tendered, the prisoner has a right to him if he is competent; the court cannot set him aside without a cause which goes to his competency as a juror. Granberry was tendered to the prisoner, for so we must understand the bill of exceptions, as he could not have been examined without being tendered. He was found competent as a juror, and the prisoner was anxious to take him. He had a right to have him, of which he could not be deprived by the court under the circumstances. It is very probable the court might properly set aside a juror who was physically or mentally incompetent, but there was no such emergency in the present case. The juror merely desired to be excused because of the sickness of his wife. He did not even say that his presence at home was necessary. Doubtless it was not, or he would not have been in attendance. Even if a proper excuse would have justified the discharge of the juror, this Avas not of that character.
On the next point, the material facts are, that the jury were placed in charge of an officer, who took them to the jury room in the court-house. By agreement of the prisoner they were afterwards taken to the Oak Tree hotel, where they could get refreshment, and there to be kept until they could agree. At the hotel they were taken to the public table, Avhere they ate with the boarders, being seated at one end of the table, with the officer between them and the guests. Rooms were provided for them at the’hotel, and at their request a barber was sent for to shave some of them, and cut their hair. The barber Avas in the room more than an hour, and whilst there, another deputy sheriff called the officer having charge of the jury out of the room; he left it, closing the door behind him, and conversed with the other deputy. He left the jury room for a few minutes, and during his absence left the jury in charge of the other deputy. There was no evidence of tampering either by the barber or by the guests at table; on the contrary, the officer stated that he heard no one speak to them on the subject of trial, though the barber might have done so by whispering, or *402 he might have conveyed written communications to them. On this state of facts, it is sufficient to refer to Hare’s Case, 4 How. 187, as decisive of this. But it has been argued that the verdict should stand, unless tampering or improper influences be shown. This would be a very unsafe rule. The prisoner who is in confinement would not be able, one time in a hundred, to show that a verdict had been procured by improper means, although such may have been the case. The rule of the common law is, where the jurors depart from the bar, a bailiff must be sworn to keep them together, and not suffer any one to speak with them. This is a plain, practical, and safe rule. It cannot be mistaken, and is easily followed. Any departure from it is a violation, and leads to confusion and difficulty in which there is no rule of law to guide us. Each departure may make a new case for the discretion of the court, for when there has been a departure from the given rule, the verdict must depend upon the discretion of the court. Can the court say it is no harm for one person to be with the jury % The law does not say so, and if one may be there, perhaps, in the opinion of the court, two would do no mischief. Then again, if a stranger may be with the jury a few minutes or an hour, the court must settle a question of time — How long may he be with them without vitiating the verdict ? There is no rule of law by which these things can be determined. If the common law rule be followed, there is certainty, but if1 not, there is uncertainty. And if a prisoner must show that the verdict is vicious, it is needless to pretend to hold to the forms of law ; it may be made up in the street or in the court-yard, and it is good. The case of Hare received deliberate consideration, and is believed to propound the. law correctly.
Let the judgment be reversed, and the cause remanded.