BOLES *v.* THE STATE, 24 Miss. Rep., 445.

### HOMICIDE.

A prisoner indicted for a capital offense, has an unquestionable right to select his jury from the whole number of those summoned by virtue of the special *venire facias*, and of whose names a list had been furnished to him, provided a sufficient number could be regularly obtained therefrom.

It is not competent for the circuit court to discharge a person summoned under the special *venire*, in a capital case, without good and sufficient cause. The court says: "Upon the principles of reason and common sense, it is manifest that a circuit judge has no authority, without sufficient cause, to discharge a juror specially summoned for the trial of a capital felony." And further, "To dispense with a juror, summoned upon the special *venire* in capital cases, without cause and against the consent of the accused, would be an unwarrantable exercise of authority by the judge presiding."

In an attempt to impeach the judgment of the circuit court, the record should distinctly show the facts upon which the charge of error is predicated, otherwise the action of the court will be presumed to be strictly in accordance with law.

To dispense with the attendance of persons summoned on the special *venire*, who failed to attend when called, is not error, provided the jury has been completed from those summoned and in attendance.

To dispense with the attendance of such persons, is not a discharge of them, and they may be called again, if the jury should not be completed from those summoned and in attendance, and their attendance enforced, under the discretion of the court, by proper process.

That persons not freeholders or householders, were summoned on the *venire*, is no ground for challenge to the array, or to quash; nor is it sufficient cause for reversal.

Upon cross-examination of a witness, greater latitude is allowed than on an examination in chief, and leading questions are admissible.

The answer of the accused to a question asked subsequent to the commission of the offense, is no part of the *res gestæ*, and was properly excluded from the jury.

Where the accused has been indicted, tried, convicted and sentenced in one county, and upon a reversal of the judgment has obtained a change of venue to another county, and is put upon his trial there, it is error to allow the affidavit upon which the venue has been changed, or the record of the former trial and conviction, to be read in evidence to the jury.

Error to the circuit court of Hinds County. BARNETT, J.

The accused was indicted at the October term, 1846, of the Warren county circuit court, for the murder of one Donnahoo. He was tried and convicted at the May term, 1847. Upon error to the high court a new trial was granted. At May term, 1848, the venue was changed to Hinds county, and at May term, 1849, a trial and conviction was had. Upon error to the high court, a new trial was again granted, and at May term, 1852, he was again tried, convicted and sentenced; to this judgment the present writ of error was taken.

In making up the jury, six of those summoned on the special *venire* failed to appear when their names were called. The prisoner objected to the further call until the attendance of those absent could be enforced. The court overruled the objection, and the call proceeded. To this the prisoner excepted. The jury was completed from the remainder of the panel summoned on the special *venire.*

Among those summoned on the special *venire*, appeared the name of John W. Jones. When this name was called, one James W. Jones appeared, and proving to be a competent juror, was peremptorily challenged by the state. The prisoner stated to the court that the name of James W. Jones was not on the copy of the panel furnished to the prisoner. Jones was called back, and stated that he had been summoned by the sheriff as a juror in the case, and had told the sheriff that he signed his name J. W. Jones. The accused demanded the production of John W. Jones, and objected to a further call without him. The objection was not sustained, and the call proceeded.

Four of the panel summoned were incompetent, being neither freeholders nor householders.

On cross-examination of a witness, (Carlisle,) the state put this question, " Was not the intoxicated condition of the deceased

such that, unless he had leaned for support on the post, or some other support, he could not have stood up?"  To this question the prisoner objected; the court overruled the objection, and the witness answered, "I considered the deceased *very drunk* and quite overpowered by liquor."

The prisoner having introduced one McElwee as a witness, who stated that on the day of the killing, he saw the prisoner running, pursued by one E. E. Bruner (a witness who had testified on the part of the state), who had a pistol in his hand, and exclaimed, "Stop, you old rascal, or I'll shoot you," the state re-introduced said Bruner in rebuttal of this portion of McElwee's statements, and who denied having a pistol in his hand at the time referred to, or having used the expressions attributed to him by McElwee.

The state then asked Bruner the following question: "When you had overtaken the prisoner, or while pursuing him, what did you say to him?"  He replied, "that he asked the prisoner why he did so?" and, in opposition to the remonstrance of the state, further stated that the prisoner replied, "that he would allow no man to follow him round town."  This part of the answer was excluded from the jury.

The state then read to the jury the record of the trial, conviction and sentence of the prisoner in the circuit court of Warren county, the judgment of the high court of errors and appeals granting a new trial, and the affidavit of the prisoner upon which the *venue* was changed.  To which the prisoner objected and excepted.

The errors assigned are as follows:

1. Because the court dispensed with the attendance of James W. Farr and five others, persons summoned as jurors on the special *venire*, and refused the application of the prisoner for an attachment against said jurors.

2. Because the juror, John W. Jones, was not presented, though returned on the special *venire*, and James W. Jones placed on the *venire* in his stead.

3. Because the special *venire* contained the names of four persons summoned as jurors, who were neither freeholders nor householders.

4. Because the court below permitted a leading question to be propounded to the witness, John C. Carlisle.

5. Because the court below, in the examination of the witness, Bruner, permitted him to relate part of the declarations of the accused touching this offense, and rejected that portion of such confessions favorable to the accused.

6. Because the court permitted the district attorney to read the affidavit of the accused for a change of *venue*, and the entry of such change as contained in the minutes of Hinds circuit court.

7. Because the court permitted the district attorney to read to the jury the record from the Warren circuit court, reciting a former conviction for this offense.

*Amos R. Johnston* for plaintiff in error.

Upon the power of the court to dispense with absent jurors, summoned on the special *venire*, counsel cited: Hutch. Dig., 1007, art. 7, § 1; ib., 1003; and as to the copy of the *venire*, Boles v. The State, 13 S. & M., 399.

As to the summoning of disqualified persons by the sheriff, on the panel, defendant cited, Byrd v. The State, 1 How. R., 163.

Questions propounded to witness, Carlisle, are leading ones, and objectionable. Toomy v. The State, 8 S. & M., 104; 1 Greenl. Ev., § 434; 1 Starkie Ev., 169.

The state was permitted to call for and obtain part of the statement of accused at the time of the homicide, and excluded the balance. This was error. The whole conversation ought to be given. 1 Greenl. Ev., §§ 201, 218; Torrance v. Hurst, Walk. R., 403; Roscoe Cr. Ev., 51.

The constitution of Mississippi intended to preserve the trial by jury inviolate with all the common-law incidents of the institution. See Constitution, art. 1, § 28.

*D. C. Glenn*, attorney general,

Insisted in reply to many points made by counsel for accused, that something must be permitted to the discretion of the court below; Barb. Cr. Law, 356, 357; 13 Wendell, 351, 355; 4 Taunt., 309.

It was insisted that the proof of a former conviction and reversal, and the change of *venue*, was proper and essential, as the

legal history of the case.    Accused was indicted eight years ago;
and the record should show, that in the mean time, the state has
done its duty in the prosecution, or else the party is entitled to
his discharge.  See Byrd's case, 1 How. R.; Lowper case, 3 ib.;
Nixon's case, 2 S. & M., 503.

SMITH, C. J.:

   This was an indictment tried in the circuit court of Hinds,
upon which William H. Boles, the plaintiff in error, was con-
victed of the murder of one Donnahoo.

   A motion was made for a new trial, which was overruled, and
the case having been removed into this court, we are asked to
reverse the judgment for errors alleged to have occurred during
the progress of the trial below.

   We will proceed to consider the objections pressed upon our
attention in the order in which they were discussed.

   1. The three first bills of exceptions present this state of
facts : In making up the jury the names of James W. Farr,
Hugh Sheridan, James Staughton, Peter Barr, H. E. Windley
and Elijah Peyton, were regularly reached on the list of jurors,
summoned by virtue of the special *venire facias*, which issued
in the case.   These persons, upon being called, did not answer
to their names;  whereupon the prisoner, in each instance,
and before the succeeding name was called, objected to a fur-
ther call of the persons summoned as jurors, until the juror called
and failing to attend, should be attached, or his attendance other-
wise procured.   The objection in each case was disregarded, and
the call of the special *venire* proceeded with.   This action of the
court, it is alleged, was unauthorized and illegal.   By the statute,
(Hutch. Code, 1007, art. 7, § 1,) it is directed that whenever any
person shall have been arraigned, charged with an offense the
punishment of which is death, it shall be the duty of the court
forthwith to award a special *venire,* by which the sheriff is re-
quired to summon from the county any number which may be
directed by the judge of said court, not exceeding one hundred
jurors.   From the persons thus summoned, the jury by whom
the award is to be tried, are to be taken, unless the *venire* should
be exhausted before the jury is completed.   In the event that a

sufficient number of competent and impartial jurors to constitute a jury cannot be selected from the special *venire,* recourse must be had to the regular panel, and the *tales* jurors summoned for the day.

By another provision of the statute, (Hutch. Code, 1003,) the party under an indictment for a capital felony is entitled to a list, to be furnished at least two entire days before the day of trial, of the jurors summoned by virtue of the special *venire facias.* These directions of the statute are of the highest importance. They are designed to ensure to persons criminally charged the full benefit of a trial by an impartial jury of the country, as guaranteed in the bill of rights. Courts, therefore, charged with the administration of the criminal jurisprudence of the state, will be solicitous to enforce intelligently and with firmness and fidelity, every provision of the statute regulating the trial by jury. Hence, if in the course pursued by the court upon the point under consideration, the rights of the accused have in anywise been violated, it will be for us to apply the corrective.

It will not be contested that the prisoner was entitled to a trial by jury selected from the persons summoned under the special *venire facias,* and of whose names a list had been furnished to him, provided a sufficient number of competent jurors be, according to the rules regulating the empanelling of juries, obtained therefrom. The objection is, that the action of the court tended to impair this right of the prisoner. It is argued, that if a judge under such circumstances has a right to dispense with the attendance of any number of the *venire* from which the jury should be selected, he may, with equal propriety, dispense with the whole, and thus be enabled to defeat the manifest intention of the statute, and thereby deprive a party capitally charged of rights solemnly guaranteed by the constitution. This court has never held that it was competent for a circuit judge to discharge a person summoned under the special *venire* in a capital case, without sufficient cause. In the case at bar, when before this court on a former occasion (13 S. & M., 401), the contrary doctrine seems to have been intimated. It was then said: "A list of the *venire* is to be furnished the prisoner two entire days before the

trial.   This is to give him an opportunity of selecting a jury from the list furnished.   A prisoner has not a right to be tried by such a jury as he might select from the body of the county, but he has a right to make his selection from the list furnished him, as far as it is practicable for him to do so, by exercising the right of challenge for cause, or his right of peremptory challenge."   On the same occasion, it was further held, that a juror who had been tendered to the prisoner, could not, against his consent, be discharged ; this court saying, that the "prisoner had a right to have him, of which he could not be deprived under the circumstances.   It is very probable, that the court might properly set aside a juror who was physically or mentally incompetent, but there was no such emergency in the present case."   Indeed, without the aid of authority, upon the principles of reason and common sense, it is manifest that a circuit judge does not possess the authority to discharge without sufficient cause, a juror specially summoned for the trial of a capital felony.   And the violation of principle would be equally great, although the injury might not be so obvious, if the exercise of an unrestrained discretion over the subject were confined to a single instance, instead of being extended to an indefinite number of the *venire*.   Concurring with counsel, that to dispense with a juror summoned upon the special *venire* in capital cases, without cause, and against the consent of the accused, would be an unwarrantable exercise of authority by the presiding judge, we nevertheless think the action of the court under consideration was unexceptionable.

The record in the case at bar does not show that the special *venire* was exhausted before a jury had been selected, and that recourse was therefore necessary to the regular panel, or to *tales* jurors summoned for the occasion.   As the effort is to impeach the judgment of the court, the facts, upon which the charge of error is predicated must be shown distinctly by the record to exist; as upon an unvarying principle, unless that be done, the action of the court will be held to be in strict accordance with the law.   We must assume, therefore, that the jury, which was empanelled, and by whom the prisoner was tried, were taken from the special *venire*.   But it is assumed, that the prisoner had

a right to select the jury from the whole of the special *venire.* Hence, it is argued, that the court, by dispensing with the jurors above named, infringed that right, as the accused was compelled thereby to select his jury from a part, and not from the whole panel. The argument is not borne out by the record. When those persons were called, and failing to attend, the prisoner objected to a farther call of the *venire,* unless the attendance of the absent jurors should be procured by attachment or otherwise, the court disregarded the objection and proceeded with the cause. The record does not show that they were discharged, nor does it affirmatively appear, that an application was made for an attachment to bring them before the court. If, after the state and prisoner had failed to obtain a sufficient number of competent jurors from those of the special *venire,* in attendance upon the court, an application for an attachment to compel the attendance of the absentees had been refused, a very different question would have arisen. In such a case we apprehend, the accused, as a general rule, would have a right to demand the process of the court to compel their attendance. But even here, something must necessarily be left to the discretion of the court, as we may readily suppose the existence of circumstances, which would justify a refusal. Then, upon the facts presented by the record, of what has the prisoner a right to complain? We answer, nothing. The absents jurors were not discharged. The exigency did not arise in which the prisoner could demand an attachment, as the jury was empanelled before the special *venire* was exhausted. The right to select the jury from the whole number summoned was not abridged; at most, the right of the accused to select from the absent jurors was postponed, until it could be ascertained, whether a jury could be constituted of those, whose names stood posterior on the list, which was precisely what the representative of the state, with the sanction of the court, would have had the power to do, if they had been present.

2. The next exception is of a similar character. It is presented by the fourth bill of exceptions, from which it appears, that John W. Jones was returned, as summoned by the sheriff on the special *venire.* Upon the call of the *venire,* James W.

Jones answered to that name, and upon examination, being found to be a competent juror, was peremptorily challenged by the state. Afterwards it was ascertained, that the name of James W. Jones was not upon the list of the names of the jurors returned as summoned. It appears, that James W. Jones was in fact summoned, but it does not appear that John W. Jones was not. The prisoner's counsel demanded the production of John W. Jones, and upon his non-appearance, objected to proceeding with the call of the *venire.* The court overruled the objection, and proceeded with the cause. What we have above said is a sufficient answer to this exception.

3. It appears from the record, that four persons were summoned as jurors, who, upon their appearance at the trial, were examined on oath, and found to be neither freeholders nor householders; whereupon they were severally discharged by the court. This proceeding does not appear, from the bill of exceptions, to have been regarded as objectionable. It was undoubtedly correct; but it is now insisted, that, as it was the duty of the sheriff, in obedience to the mandate of the special *venire facias,* to summon as jurors for the trial of the prisoner, only such persons as were duly qualified, his omission to do so, or rather his having returned upon the panel, persons disqualified to sit as jurors, was an infringement of the prisoner's rights.

By the statute, Hutch. Code, p. 888, art. 10, it was enacted, that thereafter, no challenge to the array should be sustained, nor should any *venire facias* be quashed, by any court, for any cause whatever, except in capital cases, in which the special *venire* might be quashed, for partiality or corruption in the officers executing the writ. The fact, that disqualified persons were summoned, if it constituted a defect in the special *venire,* could not, therefore, be objected to by a challenge to the array, and was no ground to quash, unless upon proof of partiality or corruption in the sheriff. There is no charge of partiality or corruption against the officer, and it is difficult to perceive, why an alleged defect, which, if admitted to exist, constituted no ground for quashing the special *venire,* should be a sufficient reason for reversing the judgment. We apprehend, that it could not have been the intention of the legislature to subject a party

criminally charged, to trial by a jury illegally constituted, and whose finding would consequently be erroneous.

4. The next objection is, that an illegal question was allowed to be propounded to, and answered by a witness, examined on the trial.

John F. Carlisle was produced as a witness, and examined in chief by the prisoner. Upon his cross-examination, the following question was asked by the district attorney, to wit: "Was not the intoxicated condition of the deceased such, that unless he had leaned for support on the post or some other supporter, he could not have stood up?" The objection is, that this was a leading question; and doubtless it is. 2 Ph. Ev. 401; Turney v. State, 8 S. & M., 104. But, as we have seen, the question was propounded to the witness on his cross-examination. Upon cross-examination, a much greater latitude is allowed, than upon the examination in chief, and it is settled, that upon such examination, leading questions are admissible. 2 Ph. Ev., 406; 4 ib. 723; note, 373. In permitting the question to be asked, there was, therefore, no error. Nor do we think the court erred, in refusing to allow the answer of the prisoner to the question addressed to him by the witness Bruner, to be given in evidence. The answer of the prisoner was properly excluded upon a plain principle. It is not contended, that it was admissible as a part of the *res gestæ;* and no attempt had been made on the part of the state to introduce the statements or confessions of the prisoner.

5. We will, in the last place, direct our attention to the exception taken to the admission of certain evidence introduced in behalf of the prosecution.

The crime charged was committed, as alleged, in the county of Warren; in which the prisoner was indicted, and, in the first instance tried and convicted of murder. The judgment rendered upon that conviction was reversed by this court, and the cause was sent back to that county for a new trial. Afterwards the venue was changed, and the case transferred to the circuit court of Hinds county. On the trial in the latter county, the affidavit made by the prisoner for the purpose of obtaining a change of venue from the Warren circuit court, and the record of the con-

viction and sentence of the prisoner therein, were offered as evidence to the jury. The prisoner objected, but his objection was overruled, and the affidavit and record were accordingly read by the prosecuting attorney.

The affidavit for a change of venue made by the prisoner could not conduce to prove the issue submitted to the jury. It was wholly irrelevant, and therefore inadmissible. But the irrelevancy of this testimony was not the strongest reason why it should have been rejected. Its obvious tendency was to prejudice the minds of the jurors, and thereby render them less capable of a calm and impartial examination of the evidence. It presented to them the prisoner in the odious attitude of a man, who, charged with a capital offense, was so hateful, or whose guilt was so strongly suspected, that a fair trial could not be had in the county where the offense was committed.

The same objections apply, but with greater force, to the introduction of the record of the conviction and sentence. The fact, that a jury of the county of Warren, on a previous trial of the prisoner for the same offense, upon the same indictment, had found him guilty of the offense charged, was certainly not legitimate evidence to establish his guilt before a jury in the county of Hinds. The fact, that the judge, who presided on the trial, after a review of the evidence, refused the prisoner's application for a new trial, and pronounced sentence upon him, was equally inadmissible as evidence in the cause. The effect of this evidence, under any circumstances, must have been unfavorable to the prisoner, and in a doubtful case might have proved fatal to him.

We think the court erred in the admission of this evidence; and, therefore, reverse the judgment, award a new trial, and remand the prisoner.