PARKER v. STATE.

(In Banc. March 17, 1947.)

[29 So. (2d) 910. No. 36266.]

**M. V. B. Miller,** of Meridian, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

Argued orally by **M. V. B. Miller**, for appellant, and by **R. O. Arrington**, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Mode Parker was indicted for the murder of Tommy Comans, convicted of manslaughter and sentenced to the State penitentiary for ten years, from which he appeals.

On August 6, 1945, which was Monday and the first day of the term of court, the case was set for call the following Wednesday. On Wednesday appellant made a motion for continuance of the case to a later day in the term because of the absence of Miss Laura Fulton (then

Mrs. Eley). The court overruled that motion. That action is assigned as error. The record discloses that Mrs. Eley's testimony would only have been cumulative and tended to impeach that of a State's witness. In addition, she did not testify in support of appellant's motion for a new trial, nor was her affidavit produced showing what her testimony would have been, although her situation was such that she could have given an affidavit. On the other hand, a letter from her, appearing in the record, indicates that her testimony would have been of the character as above stated. The trial judge has broad discretion in granting and refusing continuances, and Section 1520, Code 1942, enjoins upon this Court the duty not to reverse a case because the trial court refuses a continuance unless we are "satisfied that injustice resulted therefrom." A review of this record does not satisfy us that injustice resulted to defendant from this action. We cannot reverse the trial judge under these circumstances. Goins v. State, 155 Miss. 662, 124 So. 785; Maddox v. State, 173 Miss. 799, 163 So. 449; Sistrunk v. State, 200 Miss. 437, 27 So. (2d) 606.

Appellant moved the Court to " . . . enter a mistrial in this case, quash the jury panel and direct a venire facias to be drawn on the resetting of the case," because the Judge had excused from jury service, before the case was called for trial and not in open court and without prior notice to appellant, twenty-six of the veniremen who had been summoned for jury duty. The Court overruled the motion and this is urged as reversible error. Appellant says the Judge had no power to hear and pass upon requests of jurors to be relieved of service except in open court. Section 1764, Code 1942. The State replies (1) that compliance with that Section is discretionary, but, if, not (2) the error was cured in this case, and (3) that Parker cannot complain, because it is not shown that he was in any manner prejudiced by this action of the Judge. On motion of appellant the Court had ordered that ninety persons be summoned on a special venire. Seventy-four

of these were summoned, the others, for various reasons, not being found, about which no question is raised. Of the seventy-four who were summoned the trial judge excused twenty-six before calling the case for trial. As we understand, these jurors, with one or two exceptions, appeared personally before the judge in chambers and made their requests and gave their reasons for discharge. None were excused in the courtroom in open court and no notice was given Parker, or his counsel, of any request before the twenty-six were thus excused. As best we can determine from the record, seven were excused because they claimed to be ill; seven for business reasons; five because of family illness; two were over age for jury service; five were disqualified for jury service, one having been convicted of a crime and the other four being qualified voters.

We will deal with the discretionary feature of Section 1764 and the effect of failure to literally comply therewith. That Section defines those who are exempt from, and who are subject to, jury service and the manner of presenting excuses from such service. The manner of presenting excuses is the question involved here. Excuses based on personal illness of the juror or illness in his family "must be made either under the oath of the juror in open court or by certificate of a competent physician, made of his own knowledge and not by hearsay." Excuses based upon business reasons, or emergencies, " . . . must be made by the juror, in open court, under oath or by affidavit filed with the clerk and heard and examined in open court . . . ," but if the excuse is such it would embarrass the juror if heard in open court, the judge may hear it in chambers in the presence of the sheriff or his deputy.

Section 1796, Code 1942, reads: "A challenge to the array shall not be sustained, except for fraud, nor shall any venire facias, except a special venire facias in a criminal case, be quashed for any cause whatever."

Section 1798, Code 1942, provides, "All the provisions of law in relation to the listing, drawing, summoning and impaneling juries are directory merely; and a jury listed, drawn, summoned or impaneled, though in an informal or irregular manner shall be deemed a legal jury after it shall have been impaneled and sworn; and shall have the power to perform all the duties devolving on the jury." All these sections must be considered together in determining the duty of the judge and the effect of his failure to literally comply with Section 1764.

And we observe, in the first place, that a literal compliance with that statute would often be impossible. For instance, it requires excuses for personal illness to be presented in open court or by affidavit of a physician of his own knowledge. Suppose a juror became suddenly ill as he was departing for the courthouse to serve as a juror, yet with no time, or opportunity, to have a physician personally attend him and make an affidavit in time to present it to the Court when his name is called for jury service. Other circumstances showing the impossibility of strict compliance with the statute can easily be visualized. Therefore, it will not do to say that the accused is entitled to a reversal in every instance where the statute is not literally complied with. If so, few convictions could be sustained where special venires are used.

On the other hand, the statute is in the Code and should be complied with where it is practicable to do so. The main object in its enactment was to adopt a method of testing the genuineness of excuses from jury service. It is much easier and less embarrassing to present a feigned excuse in private than in public. There may be present in open court those who have information as to the accuracy of the excuse. The party may be embarrassed, too, by consciousness that his fellow citizens may think or know he is trying to shirk a public duty. And, furthermore, the statute is a protection to the trial judge, as a preventative to harassment in granting

or refusing private requests. These, and other reasons which might be stated, impose on the judge the duty to require compliance with the statute except where it is impracticable to do so.

And this brings us to the point of stating a rule as to the result in case the judge violates or fails to perform his duty in this regard. That rule is this: It is not enough to warrant the court in quashing the venire that the trial judge has violated or failed to do his duty in this regard, but, to so warrant, the evidence and circumstances must show actual fraud or such flagrant violation of duty in this respect as that the proven facts and circumstances show a legal fraud on the rights of the defendant. Cook v. State, 90 Miss. 137, 43 So. 618.

There is no intimation of actual fraud in the case at bar. Nor do we think the facts and circumstances show any legal fraud on the rights of appellant. In the first place, we have examined all of the excuses given by the twenty-six jurors who were excused, and we cannot say, looking to the nature of requests, the learned trial judge would have been in error as to any one of them, had he acted upon them in open court. In the next place, we think the proceedings show there was no legal fraud on the rights of appellant. These proceedings were: On Monday, the first day of court, the case was set for call the following Wednesday, when it was called and set for trial Friday. On Friday, when counsel for appellant learned the twenty-six jurors had been excused, they proceeded to inquire of the judge and the sheriff at length the reasons for such excuses. A record was made of that inquiry, and at its conclusion said counsel made a motion that the court draw from the jury box and summon for jury service on that case thirty additional names "to replace those excused without consent of the defendant." The judge refused the motion at that time. Twenty-six of the venire-men present were either disqualified or presented legal excuses. Counsel then renewed the motion for the additional thirty men. That request was repeated a

number of times as the voir dire examination of the remaining veniremen and the two regular petit juries proceeded. When the special venire had been exhausted and two of the twenty-four members of the regular juries had been excused, and it appeared additional jurors might be needed to get a jury, the judge then ordered that the thirty additional persons be summoned, which was done, and a copy of this list, as summoned, was given able counsel appellant within the time as requested and agreed by them. Apparently, all of the additional thirty men were not used or needed to get a qualified trial jury, although it appears appellant had exhausted his peremptory challenges by the time the trial jury was impaneled. It is thus seen appellant got the benefit of thirty men to take the place of the twenty-six excused by the judge out of the courtroom. It may be noted, too, that the judge, in his discretion, might have summoned only forty men on the venire in the first instance. Section 1795, Code 1942. The foregoing facts and circumstances dispel any probability of legal fraud on the rights of appellant.

In addition, it is not shown that appellant was prejudiced by the foregoing action. It is pure speculation whether these excused jurors would have been more favorable to appellant than the additional thirty. Nor is there any showing that the jury finally impaneled and which tried him was not a fair and impartial jury. For an error to work a reversal it must be shown that the defendant was actually prejudiced or the circumstances be such that the court must presume prejudice. Cody v. State, 167 Miss. 150, 163, 148 So. 627; Porter v. State, 193 Miss. 774, 776, 10 So. (2d) 377.

Appellant assigns as error the rulings of the Court in admitting evidence on behalf of the State and sustaining objections to testimony offered by him. The assignment is largely couched in general terms. However, we have had in mind as we have read the testimony the general objection, as well as the specific objections, made here

and at the trial, and we find no reversible error, if error at all, in the rulings of the judge on the testimony. In fact, looking at the record as an entirety, the rulings were favorable to the defendant. For instance, the Court permitted him to prove not only the fact of two prior personal difficulties with Comans but many of the details thereof and that Comans was the aggressor therein.

We do not find any reversible error in this record.

Affirmed.

### PARTIALLY DISSENTING OPINION.

**L. A. Smith, Sr., J.,** delivered a partially dissenting opinion.

It is always with diffidence that I venture to disagree with the collective learning and wisdom of any majority of my associates here, but sometimes I am impelled by the force of my own strong convictions to do so. This is one of such occasions, and I respectfully express my dissident views, because I am convinced that a fine piece of remedial legislation is being emasculated by having the heart taken out of it. To me it is manifestly a mandatory statute, designed to avert opportunities for trial judges to abuse discretion to the disadvantage of litigants; to put the public on notice that no special private exemptions can be granted any veniremen; and that all alike, the humbel and the exalted, must, in open court or by affidavit heard in open court, present their excuses from jury service; at an open hearing with a public adjudication thereon.

Chapter 302, Laws 1938, provides "an excuse for illness must be made either under the oath of the juror in open court or by certificate of a competent physician, made of his own knowledge and not by hearsay. . . . And (c) the excuses must be made by the juror, in open court, under oath or by affidavit filed with the clerk and heard and examined in open court; provided, that when

an excuse is of such nature that to make it publicly in open court would seriously embarrass the juror, the judge may hear it in chambers at the courthouse in the presence of the sheriff or his deputy."

An examination of this statute reveals that it classifies other excuses in detail, and continues as above. It provides the only condition under which the judge may hear excuses otherwise than listed therein, and those are (1) that it must be so embarrassing that it could not in fairness to the juror be heard in open court; (2) then it may be heard in chambers at the courthouse; (3) in the presence of the sheriff or his deputy. No part of the statute was complied with here. The trial judge wholly disregarded it, although the statute is manifestly mandatory.

It is said, however, that the old statute, Section 2064, Code 1930, in existence long before Chapter 302, Laws 1938, was adopted, makes also this new statute directory. The new statute sets up a general rule, and a permissible exception thereto. The other older statutes do not detail such exceptions. Here, the trial judge breached both the general statutory rule, and also the only permittable exception to it. Even if it be conceded, for the argument, that the general rule is directory—,is the exception also directory? The whole present statute is a radical change from mere direction to compulsion, I think. Section 2064, Code 1930, laid down a broad rule governing all the then existing jury statutes generically. In 1938 by Chapter 302 the Legislature subsequently adopted the specific procedure involved here, and being specific, and not logically directory by its own language, it, according to rules of statutory construction in such cases, must control mandatorily. This statute affects the whole system of the phase of jury service with which it deals, and not mere defects and irregularities in a particular venire facias in a special case.

The directory statute has no application to this case, since the situation with which we are dealing concerns

the privately excusing of prospective jurors before the matter of impaneling the jury was reached. This Court said in Rhodman v. State, 153 Miss. 15, 120 So. 201, that the statute declaring jury laws laws to be directory undertakes only to cure irregularities and defects, in listing, drawing, summoning and impaneling juries. None of these matters are involved here. The illegal excusing of members of the special venire facias, and the unauthorized summoning belatedly of others as substitutes, is the gravamen of the error here, and for its commission I think the appellant should have a new trial.

I can see that, in reason, the over-all jury system should be, generally, directory in order to prevent its directions from impairing judicial processes by furnishing losing litigants prolific sources of judicial error, to be availed of on appeal. But this is a special statute, adopted after the complete jury scheme had come into its final status, including the statute, Section 2064, Code 1930, declaring its provisions to be directory, and to be effective it must be mandatory. It is, to me, therefore, manifest that the Legislature intended by the latter, Chapter 302, Laws of 1938, to require exact obedience thereto by the trial judge.

Its import is that the judge be deprived of the power privately to excuse prospective jurors. What will be left of the effectiveness of the Act, when, as the majority opinion holds, it is amended by judicial interpretation to mean that, in his discretion, the trial judge may consider and pass on such excuses privately? The statute requires that it be done in open court or by affidavit heard in open court, with named exceptions. The opinion, however, would add except such cases as the judge elects to hear privately. This view supplants the purpose and intention of the statute by a potentially complete frustration; its mandatory procedure surrenders to the substitution of the will of the trial judge for its carefully worked out commands.

An attorney, who seeks and obtains a special venire in a capital case, has availed himself of a most valuable privilege in the discharge of his duty to his client. The additional right granted him by Section 1262, Code 1930, Section 2505, Code 1942, of one whole day's service before trial afforded him another aid in his onerous responsibilities. He is enabled thereby to investigate the veniremen as summoned and given time to do so. Then, in the case at bar, having done so, how astonishingly futile were the time and efforts of appellant's attorney here, and how useless were the two beneficient privileges granted him by the law, rendered practically nugatory, when the trial court had already excused a substantial number of the special venire before court convened.

A defendant is allowed unlimited challenges for cause. This presupposes such knowledge touching each veniremen as will (1) enable the attorney to conclude he had a valid reason to support challenge of a member of the venire for cause and (2) to so formulate his ideas as to present to the trial judge the cause of his challenge, and to maintain it, and (3) enable the trial judge to have an adequate basis on which to found his ruling on the challenge, one way or another.

Where the members of a venire are required to present excuses in open court in the hearing of all, many will refrain from seeking exemption from jury service where they have no just excuse or a trivial one. Furthermore, trial judges in many instances probably would deny such pleas in open court. These are some of the things the legislature had in mind, I am sure, when this statute was enacted. Also, it seems to me, they gave consideration to the fact, that compliance with the statute conduced to the procurement of better jurors than the haphazard substitution from casual or purposeful bystanders, and that it promoted economical administration of the business of the courts and prevented delays.

The action of the trial court was a total departure from the dictates of the statutes as regards a substantial

number of special veniremen. The violation of the statute thus could not subsequently be mended by the later summoning of thirty more special talesmen after the exhaustion of what was left of the first special venire facias and the regular panel. All the advantages and safeguards to which defendant was entitled, supra, were thereby sacrificed to his disadvantage.

This Court held in Morrison v. State, 155 Miss. 323, 124 So. 362, 363, that a departure from primary or fundamental requirements, with premeditated and predetermined purpose and designs so to depart, the matter is one for correction on appeal. Said the Court: ''When appellant appeared in court on Tuesday morning of the fourth week, the day set for his trial, and the names of the jurors were called, the sheriff omitted the names of eight of the regular jurors . . . It was then discovered that the sheriff, during the second week of the term, had sent out and called in, as tales jurors for said second week, the fourth week jurors whose names he omitted to call on said day of the said fourth week.'' There is a comparable situation, with the excusing by the Court of the original special veniremen and substitution of the subsequent thirty veniremen here, after exhaustion of the former and the regular panel. The case cited resulted in a reversal.

It is argued, however, that apellant was not prejudiced by the action of the court in its procedure here. I am at a loss to understand how it can be conceivable that he was not prejudiced by the course followed by the trial judge here. If reasonable deduction does not lead to the inevitable conclusion of the defendant's injury by being deprived of fundamental rights, and the case should be deemed to be one of an abstraction so subtle as to make it incapable of proof, then the law, as always in such cases, will presume that defendant was materially hurt.

He cannot, I think, be said fairly to have waived any right, because, as conducted by the court, appellant was inescapably maneuvered into a situation where he was

helpless and had to attempt to make the best of a condition he had unsuccessfully fought to prevent. A waiver is a voluntary surrender of a known right. There is no such action here. The thirty new special veniremen were tendered him not before trial as the statute provided, but after it had started, and thus he was without the ample opportunity to investigate them as the law intended; and appellant had to complete the trial jury from men of whom he knew little, and as to whom he was deprived of adequate opportunity to determine whether or not he should accept them as suitable to pass upon the life or liberty of his client, which the law intended to grant him.

The controlling opinion cites, among other cases, Porter v. State, 193 Miss. 774, 10 So. (2d) 377, 379, in support of its argument as to harmless error. My view about the nature of the error is that it was highly prejudicial to appellant. However, Justice Anderson, with the concurrence of Justice Griffith, in a strong dissent from the above decision, said ''The denial of due process cannot be covered up in the expansive folds of the Mother Hubbard doctrine of harmless error. To illustrate: the trial and conviction in a capital case by eleven jurors where the evidence either showed guilt without conflict, or beyond every reasonable doubt—would the conviction be legal? Would the illegal jury be treated as harmless error? Again, the defendant is tried on information by the district attorney, without a grand jury indictment. The evidence shows guilt without conflict or beyond every reasonable doubt. Is the lack of an indictment harmless error? Can it be waived?'' The answer, of course, was that it could not be. So, here the attorney refused to waive his client's rights and could not be said to have waived them.

Even as far back as Boles v. State, 13 Smedes & M. 398, and Boles v. State, 24 Miss. 445, this Court held that the trial judge had no authority to discharge one of the special venire without good cause shown. Now, Chapter 302,

Laws 1938, prescribes the only permissible method of making such a showing. Said the Court in the 13 Smedes & M. case, ante, "There can be no justification for such an exercise of power. A list of the venire is to be furnished the prisoner two entire days before the trial. This is to give him an opportunity of selecting a jury from the list furnished. A prisoner has not a right to be tried by such a jury as he might select from the body of the county, but he has the right to make his selection from the list furnished him, as far as it is practicable for him to do so by exercising the right of challenge for cause, or his right of peremptory challenge." The Court there said this action of the trial judge entitled the prisoner to a new trial, and this case has never been overruled. The effect of it is to hold that the Court below committed prejudicial error by doing there what was done here on a larger scale.

The law grants a defendant in a capital case twelve peremptory challenges. The wise and careful use of these twelve peremptory challenges, allowed a defendant, also requires investigation and thoughtful planning to avoid their improvident expenditure. And, too, decision to accept talesmen, based on preliminary study of the veniremen listed, involves a valuable right of a defendant, which should not be destroyed by a miscellaneous private excusing of prospective jurors. Here, enough men were thus excused to comprise more than two full juries. So, the decision in Boles v. State, above quoted, that a prisoner "has the right to make his selection from the list furnished him," was salutary then and is now, and depriving him of it is prejudicial now, as it was then.

For the above reasons, I think the judgment of the lower court should be reversed and the cause remanded for a new trial.

**Griffith, J.**, concurs in this opinion.