828 So.2d 861 (2002)
Ellen MYLES, by Gloria Myles SPARKS, Duly Appointed and Acting Guardian of the Person and Estate of Ellen Myles, Appellant,
v.
ENTERGY MISSISSIPPI, INC. f/k/a Mississippi Power & Light Company, Appellee.
No. 2000-CA-01609-COA.
Court of Appeals of Mississippi.
October 15, 2002.
*864 James H. Walker, Cleveland, attorney for appellant.
John H. Dunbar, Oxford, James W. Snider, Jr., Jackson, Sammye Sue Jurney Tharp, Tupelo, attorneys for appellee.
Before McMILLIN, C.J., BRIDGES, and THOMAS, JJ.
THOMAS, J., for the court.
¶ 1. Ellen Myles drove into two forty-foot utility poles on an Entergy trailer that was parked during repairs. Myles sued Entergy in negligence and a jury returned a verdict for Entergy. Aggrieved, Myles asserts the following issues:
I. THE JURORS CONCEALED MATERIAL INFORMATION ON VOIR DIRE WHICH AMOUNTS TO JURY MISCONDUCT.
II. THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS D-13(A) AND D-14(A).
III. THE JURY VERDICT WAS CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE LAY AND MEDICAL EVIDENCE.
IV. THE TRIAL COURT ERRED IN GRANTING MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM FOR STEPHANIE HAWKINS AND ALLOWING HER TO TESTIFY.
V. THE TRIAL COURT COMMITTED ERROR IN DISALLOWING THE PLAINTIFF'S MOTION IN LIMINE DATED MAY 6, 1997, REQUESTING AN ORDER PROHIBITING DEFENDANT FROM INQUIRING OR REFERENCING THAT PLAINTIFF, ELLEN MYLES, WAS DRIVING WITHOUT A VALID MISSISSIPPI DRIVER'S LICENSE.
Finding no error, we affirm.

FACTS
¶ 2. On February 9, 1994, a severe ice storm hit the Mississippi Delta. Bolivar County was one of the hardest hit areas. Widespread loss of electricity occurred throughout the Delta and Entergy Mississippi, Inc., formerly known as Mississippi Power and Light Company, mobilized in order to restore power to the area. This was a very large effort that included many crews working to repair the lines.
¶ 3. One of those Entergy crews included Bert Parsons and Tony Smith. Parsons and Smith were working to restore power to the town of Benoit, Mississippi, which had been without power for over a week. On February 17, Parsons and Smith *865 were repairing utility poles along Highway 448, working their way west. They stopped to repair a broken pole a short distance from the residence of Charles Coglan shortly before 4:00 p.m. They parked their truck in a position off of the pavement so that they could reach the broken pole with the truck's boom. The truck was connected to a trailer which contained utility poles that were to be used to replace broken poles. There is some dispute over whether or not one wheel of the trailer was on the edge of the pavement of Highway 448. The poles on the trailer extended into the west-bound lane of Highway 448. Parsons and Smith placed an orange cone at the end of the poles and a red flag was tied on one pole. They also turned on the flashing lights on the back of the truck and trailer.
¶ 4. About thirty minutes after the Entergy crew began to work on the broken pole, Ellen Myles approached the Entergy crew at approximately 4 p.m. driving her 1978 Ford automobile. She was not wearing her corrective lenses and did not have a valid Mississippi driver's license. Myles drove into the poles protruding into the west-bound lane of the highway. There was no evidence that Myles tried to brake or swerve and no skid marks were found at the scene. The impact sheered the roof off of Myles' car and the vehicle ended up in the yard of Mr. Coglan.
¶ 5. Myles, by and through her guardian, Gloria Myles Sparks Blockett, filed suit against Entergy alleging negligence on July 19, 1996. Trial began on October 25, 1999, and ended November 4, 1999. A jury returned a 9-3 verdict in favor of Entergy. After her post-trial motion was denied, Myles perfected this appeal.
¶ 6. The accident was investigated by Mississippi Highway Patrol Officer Robert Williford. Williford approached the scene from the same direction as Myles. Williford testified at trial that the area where the accident occurred was very straight and flat and that the Entergy truck and trailer could be seen for over a mile before he reached it. Williford also testified that there was no other place for the Entergy crew to park their truck and trailer and still be able to reach the broken pole. Officer Williford testified that in his opinion Myles must have been inattentive because anyone watching the roadway would not have run into the poles.
¶ 7. Williford did not know, however, that Myles was extremely nearsighted and had been driving without her glasses. Myles' vision was 20/800 without her glasses; she sees at twenty feet what a person with 20/20 or normal vision sees at 800 feet. Vision that is 20/40 or better is required to obtain a Mississippi driver's licence. Twenty/two hundred or worse is considered to be legally blind. Accident re-constructionist John Bentley testified at trial that someone with normal vision could have avoided the accident, but Myles could not see the poles until she was too close to avoid them. Bentley testified that Myles had been traveling between forty-three and forty-nine miles per hour before the accident, and that a driver with safe vision would have had plenty of time to react to the poles.
¶ 8. Myles was treated by Dr. James Corbett in Jackson after the accident. Myles told Dr. Corbett that she was not wearing glasses at the time of the accident. She also told him that she did not wear glasses while driving and knew that she had poor eyesight without them. Myles told Dr. Corbett that she had driven down to Jackson for Corbett's examination and treatment, after the accident, without her glasses.

ANALYSIS
I. DID THE JURORS CONCEAL MATERIAL INFORMATION ON
*866 VOIR DIRE WHICH AMOUNTED TO JURY MISCONDUCT?
¶ 9. Absent a showing of fraud, unfairness or prejudice, a departure from the statutory scheme for listing, drawing, summoning and impaneling a jury is not sufficient to overturn a jury verdict. See Avery v. State, 555 So.2d 1039 (Miss.1990), overruled on other grounds by Mayfield v. State, 612 So.2d 1120 (Miss.1992); Parker v. State, 201 Miss. 579, 29 So.2d 910 (1947). Plaintiffs failed to show that any of the jurors were in fact not qualified. They also failed to show prejudice from any connection with anyone associated with the Defendant or Counsel.
¶ 10. The standard of review in examining the conduct of voir dire is abuse of discretion. Berry v. State, 575 So.2d 1, 9 (Miss.1990) (citing Billiot v. State, 454 So.2d 445, 457 (Miss.1984)). Abuse of discretion will only be found where a defendant shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint of the defense. Davis v. State, 684 So.2d 643, 652 (Miss.1996). This court shall not disturb a trial courts decision unless it is "clearly wrong." Langston v. State, 791 So.2d 273, 283(¶ 25)(Miss.Ct.App.2001).
¶ 11. There is no firm rule guiding the courts in every given situation of voir dire examination; these matters must be determined on a case by case basis. Odom v. State, 355 So.2d 1381, 1383 (Miss. 1978). Mississippi law provides that a juror is "disqualified" within the meaning of Mississippi Code Annotated § 13-5-67 (1972) where on voir dire examination he or she has withheld information or misrepresented material facts. Myers v. State, 565 So.2d 554, 558 (Miss.1990). Odom, is our seminal case. Odom holds that the failure to respond does not warrant this Court granting an appellant a new trial unless the question propounded to the juror was (1) relevant to the voir dire examination; (2) unambiguous; (3) the juror had substantial knowledge of the information sought to be elicited and (4) prejudice in selecting the jury could reasonably be inferred from the juror's failure to respond. Odom, 355 So.2d at 1383.
¶ 12. Myles contends that three jurors, Jacqueline Evans, Allean Christian, and Elaine Taylor, concealed material information on voir dire which denied Myles the right of a fair and impartial jury. To be granted a new trial based on juror concealment of material information, a defendant must show that the requirements set out in Odom are all satisfied. With respect to Jacqueline Evans and Allean Christian, Myles failed to show that either of the two had any knowledge whatsoever regarding Mr. Henry Atkins and his relationship with anyone in there families, thus failing to meet the burden of the third part of the Odom test. Elaine Taylor's concealment is irrelevant as she was excused from the jury before deliberations. Atkins is a probation officer who provided information or assistance during voir dire. Myles argues that the jurors could and would be swayed to take a position with the defense from the start, feeling it might work out better for their family later, if they had a member of their family under his supervision. In order to have thoughts like these, the members of the jury would first have to have knowledge of such. They did not. This issue has no merit.
II. DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTIONS D-13(A) AND D-14(A)?
¶ 13. The assignments of error dealing with the trial court's granting of jury instructions D-13(A) and D-14(A) are without merit. We would note at the outset the general rule that jury instructions must be considered as a whole. We are *867 not to confine our consideration to one particular instruction in isolation. Flight Line, Inc. v. Tanksley, 608 So.2d 1149, 1157 (Miss.1992). If, based upon a review of the instructions as a whole, the Court can conclude that the jury has been reasonably, though not perfectly, apprized of the applicable law, there can be no reversible error based upon an isolated defect in a particular instruction. Id.
¶ 14. In reviewing the granting or refusal of jury instructions, this Court has said that if the instructions actually given fairly announce the law of the case and create no injustice when read as a whole, no reversible error will be found. Fielder v. Magnolia Beverage Co., 757 So.2d 925, 929(¶10) (Miss. 1999) (collecting authorities); see also Rester v. Lott, 566 So.2d 1266, 1269 (Miss.1990) (The "overarching concern is that the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it"). Both parties have the right to embody their theories of the case in the jury instructions provided there is testimony to support it, but only "if made conditional upon the jury's finding that such facts existed." Murphy v. Burney, 27 So.2d 773, 774 (Miss.1946).
¶ 15. This court must examine the jury instructions as a whole:
P-2(A) reads; The court instructs the jury that no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main part of any highway outside of a business or residence district when it is practical to stop, park or so leave such vehicle off such part of said highway.
If the jury finds from a preponderance of the evidence in this case that the Defendant, Entergy Mississippi, Inc., (formerly Mississippi Power and Light Company, a Mississippi corporation) by and through one its employees, Anthony Smith and/or Albert M. Parsons, Jr., stopped, parked, or left standing its vehicle, a pole trailer with two electrical poles, on the main traveled part of Mississippi Highway No. 448 when it was practical to stop, park, or leave its vehicle, a pole trailer with two electrical poles, off such part of said highway then, in that event, the Defendant Entergy Mississippi Inc. was negligent. If you further believe from a preponderance of evidence that such negligence, if any, on the part of the Defendant proximately contributed to the injuries of the Plaintiff, Ellen Myles, if any, it is your sworn duty to find for the Plaintiff, Ellen Myles, against the Defendant, Entergy Mississippi, Inc.
P-3(A) reads; Under the law of the State of Mississippi, whenever any motor truck or bus is stopped upon the highway outside a business or residence district, except for the purpose of picking up or discharging passengers between the hours of one half hour before sunrise and one half hour after sunset, the driver' or person in charge of such vehicle shall place upon the highway in a standing position red flags, one at a distance not less than one hundred feet to the rear of the vehicle and one not less than one hundred feet in advance of the vehicle and the third upon the roadway side of the vehicle.
If the jury finds from a preponderance of the evidence in this case that the Defendant, Entergy Mississippi Inc., (formerly Mississippi Power & Light Company, a Mississippi corporation) by and through one of its employees, Anthony Smith and/or Albert M. Parsons, Jr., stopped the pole trailer with two electrical poles thereon upon Mississippi Highway Mo. 448 outside a business or residence district for a purpose other *868 than picking up or discharging passengers between the hours of one half hour before sunrise and one half hour after sunset, and failed to place upon the highway in a standing position red flags, one at a distance not less than one hundred feet to the rear of the vehicle and one not less than one hundred feet in advance of the vehicle and the third upon the roadway side of the vehicle, then, in that event the Defendant, Entergy Mississippi Inc., was negligent. If you further believe from a preponderance of the evidence that such negligence, is any, on the part of the Defendant proximately caused or proximately contributed to the injuries of the Plaintiff, Ellen Myles, if any, it is your sworn duty to find for the Plaintiff, Ellen Myles, against the Defendant, Entergy Mississippi, Inc.
D-13(A) reads; The decision to stop the truck, with the poles projecting over the roadway did not constitute negligence, if an emergency existed and if the truck trailer and poles were visible, from far enough away, for approaching drivers to see them and avoid injury.
In deciding whether the truck, trailer and poles were visible, you should decide whether they were visible to drivers that a reasonable person would foresee to be using the highway. In deciding whether the truck, trailer, and poles were visible, you should decide whether they were visible to drivers with proper vision.
If you find from a preponderance of the evidence that the truck, pole trailer and poles were visible from far enough away to permit approaching drivers to avoid injury, and if you find from a preponderance of the evidence that it was not reasonably practical to remove the equipment from the roadway, then the decision to stop the truck with the pole trailer on the pavement was not negligence.
If you so find, then it would be your sworn duty to return a verdict for the Defendant Entergy Mississippi, Inc.
D-14(A) reads; A driver is not required to stop his vehicle off the paved part of the highway unless it is "reasonably practical" for him to do it. What is "reasonably practical" depends on the facts of each case and is for you to decide from a preponderance of the evidence.
In deciding what was "reasonably practical" in this case, you may consider a number of factors, including the circumstances under which the work was being done; any other places to park; the work that needed to be done; whether the work could be done if the truck and trailer were parked in another place; how long the work would take; whether the equipment was visible and reasonably safe where it was parked; how well the ordinary driver can see; and any other factors you deem relevant.
If you believe, from a preponderance of the evidence, that it was not reasonably practical for Bert Parsons and Tony Smith, the employees of the Defendant, to park the truck, with the pole trailer off the pavement, because they were trying to get power back on for residents of the area, and they needed to park where they did, to get the electricity back on as soon as they reasonably could, and could not foresee that anyone would drive into the poles, then they were not negligent. In that event, it would be your sworn duty to return a verdict for the Defendant.
If you do not believe, from a preponderance of the evidence, that it was not reasonably practical for Bert Parsons and Tony Smith, the employees of the Defendant, to park the truck, with the *869 pole trailer off the pavement, because they were trying to get electric power back for residents of the area, and they needed to park where they did, to get the electricity back on as soon as they reasonably could, and could not foresee that anyone would drive into the poles, then they were negligent. In that event it would be your sworn duty to return a verdict for the Plaintiff.
¶ 16. Myles' theory of the case was fairly and appropriately comprised in the jury instructions, as P-3 and P-2 were given as well as D-13(A) and D-14(A). These instructions taken as a whole reasonably apprized the jury of the state of the law and what must be considered with the facts they have been exposed to in order to have the necessary information to make a decision. This assignment lacks merit.
III. THE JURY VERDICT CONTRARY TO LAW AND AGAINST THE OVERWHELMING WEIGHT OF THE CREDIBLE LAY AND MEDICAL EVIDENCE?
¶ 17. Myles argues a new trial was warranted in this case and the trial judge erred by not granting such. This Court will not set aside a jury verdict unless it is against the overwhelming weight of the evidence and credible testimony. Adams v. Green, 474 So.2d 577, 581 (Miss.1985). The jury is the judge of the weight of the evidence and the credibility of the witnesses. Jackson v. Griffin, 390 So.2d 287, 289 (Miss. 1980).
¶ 18. In determining whether a jury verdict is against the overwhelming weight of the evidence, we must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the lower court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Herrington v. Spell, 692 So.2d 93, 103 (Miss. 1997). It is well established that a jury verdict in a civil case will not be disturbed on appeal unless the verdict was against the overwhelming weight of the evidence and credible testimony or if the jury has been confused by errant instructions by the lower court, or if the jury's verdict is a result of bias, passion, and prejudice. Southwest Miss. Reg'l Med. Ctr. v. Lawrence, 684 So.2d 1257, 1267 (Miss.1996); Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss. 1989).
¶ 19. Once the jury has returned a verdict in a civil case, we are not at liberty to direct that a judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997). The evidence was presented without reversible error and the jury used such evidence in making its decision. We see no basis for doubting the verdict. The trial judge did not abuse his discretion when he denied the motion for a new trial; therefore this issue is without merit.
IV. DID THE TRIAL COURT ERR IN GRANTING MOTION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM FOR STEPHANIE HAWKINS AND ALLOWING HER TO TESTIFY?
¶ 20. Myles contends that Entergy violated Rule 26 of the Mississippi Rules of Civil Procedure and that the violation subjected her to a trial by ambush. Myles further relies on cases purporting that Rule 26 is to be strictly interpreted and rigidly enforced, and if it is not, it is *870 reversible error. The error in this argument lies in the fact that the rule was not violated and any ambush or surprise was equally felt by both sides as neither side had knowledge of the witness until the trial began.
¶ 21. Mississippi Rule of Civil Procedure 26(b)(1) outlines the scope of discovery and states in pertinent part that parties may obtain discovery including the identity and location of persons who may be called as witnesses at the trial. Myles contends that Entergy violated the rule by not disclosing the identity of Stephanie Hawkins before the trial began. This argument would have merit had Entergy known about the witness before the trial. Hawkins was not discovered until the trial was under way and upon her discovery, defense counsel tendered what information was available to both the court and plaintiff's counsel. The witness would be considered "newly discovered evidence."
¶ 22. The case sub judice is most akin to Mills v. State, 813 So.2d 688 (Miss. 2002). In Mills the prosecution was approached by a witness three days into trial. Id. The newly discovered evidence was immediately brought to the attention of the court and opposing counsel. Id. The judge determined that the newly discovered evidence did not violate the rules of discovery. Id. The trial judge has a duty to protect the interests of the parties by adhering to the rules and administering justice keeping in mind the reasoning for the rules. In this case, the trial judge did this by requiring an affidavit informing the court as to the nature of the witness's testimony as well as allowing a very unrestricted cross-examination of Hawkins. We see no basis evidencing reversible error and find that the testimony was properly allowed. Therefore, the trial judge did not abuse his discretion in issuing the writ and allowing the witness to testify.
V. DID THE TRIAL COURT COMMIT ERROR IN DISALLOWING THE PLAINTIFF'S MOTION IN LIMINE DATED MAY 6, 1997, REQUESTING AN ORDER PROHIBITING DEFENDANT FROM INQUIRING OR REFERENCING THAT PLAINTIFF, ELLEN MYLES, WAS DRIVING WITHOUT A VALID MISSISSIPPI DRIVER'S LICENSE?
¶ 23. Myles argues that she was wrongfully prejudiced by the court's denial of her motion in limine regarding her failure to procure a driver's license and the mention of such in the presence of the jury. Myles cites to Allen v. Blanks, 384 So.2d 63 (Miss.1980), and Myrick v. Holifield, 240 Miss. 106, 126 So.2d 508 (1961), to support her claims, but these cases are much different than the one sub judice. In these cases, the absence of the driver's license had no bearing at all on the negligence issue in the case, whereas Myles was driving without a license because she was unable to attain one due to her poor vision. This was also the reason she hit the poles in the road that would have been clearly visible to a person who met the eyesight standards required by the statute to insure safety on the roadways. The same factors that made her ineligible for a license are the factors which caused the accident in the case. The duty owing to an opposite party in an action of negligence must be capable of having some causal connection between it and the injury complained of. Myrick v. Holifield, 240 Miss. 106, 126 So.2d 508, 511 (1961). The causal connection is present here.
¶ 24. Other jurisdictions have allowed evidence of driving without a license when the causal connection was present. See Dorsett v. Dion, 347 So.2d 826 (Fla. Dist. Ct.App.3 1977); Klanseck v. Anderson *871 Safes & Serv., Inc., 426 Mich. 78, 393 N.W.2d 356 (1986). These cases which are more directly on point with the present case allowed evidence of lack of a driver's license when it had a direct relation to the accident in issue. Myles drove a vehicle without a license which she was unable to obtain due to her lack of vision, and it was the lack of vision that caused the accident. We find that ruling to be within the discretion afforded the trial court.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.